## CLARK et al. *vs*. THE MAYOR, &c. OF NEW YORK.

Where parties deviate from the terms of a special contract to perform work and labor, in an action for the work done, the contract price will, so far as applicable, generally be the rule of damages.

But where the contract is *terminated* by the employer against the will of the contractor, the latter is not confined to the contract price of the work done, but may bring his action for a breach of the agreement, and recover as damages the profits he would have made if allowed to complete the work; or he may waive the contract and bring his action on the common count for work and labor generally, and recover what the work done is actually worth.

But where the contractor elects to consider the contract as rescinded, and brings his action for work and labor generally, he cannot recover for profits upon the unexe-

cuted part of the work. In such a case the rule of damages is the actual value of what has been done under the contract.

Accordingly, where the plaintiffs contracted with the water commissioners of the city of New-York to construct a section of the Croton aqueduct, and the corporation stopped the work before its completion; *held*, that the plaintiffs under the common count for work, labor and materials, could recover the actual value of the work done and no more.

Where in a contract for a public work the employer reserves the right to make alterations in the form or dimensions of the work, the contractor is bound by any alterations made in pursuance of the agreement. Nor can he recover more than the contract price for the work done before the alteration, although it be more expensive and costly than the portion dispensed with by the change in the plan.

But such a clause in the contract does not authorize the employer to stop the work in an unfinished state, and thus to annul the agreement.

STEPHEN CLARK and others brought assumpsit in the su- [339] preme court against the mayor, &c. of the city of New-York. The plaintiffs, in 1838, made a contract with the water commissioners of the city of New-York, to construct section 96 of the Croton aqueduct, including the receiving reservoir. The contract was under seal, executed by the plaintiffs and by Stephen Allen on behalf of the water commissioners, of whom he was the chairman. The declaration contained a special count on the contract, stating it as made by the corporation of the city, and setting forth its terms and specifications. This count alledged that the plaintiffs entered upon the performance of the agreement, provided materials, executed a large portion of the work, and were ready fully to perform the contract, but the defendants wrongfully prevented them and refused to permit the work to be finished, whereby the plaintiffs lost the benefit, profits and advantages which might have been derived from the contract. The declaration also contained counts for work, labor, and materials, the money counts, and an account stated.

The cause was tried before referees, and on the trial the plaintiffs offered the contract in evidence. This was objected to by the defendants, on the ground that the declaration alledged a contract made by the defendants, whereas the one produced purported to be made by the water commissioners; also on the further ground that if the plaintiffs relied on the contract they should have sued the water commissioners in covenant. The

objection was overruled, and the contract and specifications annexed thereto were read in evidence. The contract provided, among other things, that the water commissioners or engineer of the corporation might make any alterations in the form, dimensions or materials of the work, and that the engineer should in all cases determine the amount or quantity of the several kinds of work to be paid for under the contract, and the amount of compensation at the rates therein provided for; also that the engineer should in all cases decide every question which might or could arise relating to the execution of the contract on the part of the contractors, and that his estimate and decision should be final and conclusive. The contract specified the [340] rious kinds of work embraced in the job, and the prices for the same; among others, *rock excavation at one dollar per cubic yard*. At the time the contract was made, an estimate was submitted showing, among other things, that the amount of rock excavation was 150,000 yards.

It was also proved that the work was stopped by the direction of the defendants, the plaintiffs being ready and willing to go on and complete it; that the amount of rock excavated at the time the work was stopped was 68,786 yards, and that to complete the work according to the plans and specifications would require 86,000 yards more; *that of the rock excavation done, 6000 yards were worth $4,20 per yard, the residue about $1,20 per yard, and that the excavation not done would cost only about thirty-five cents per yard*. It also appeared that after the work was stopped, the engineer made a final estimate and certificate of the various kinds of work done at the prices specified in the contract. It was admitted that a balance of $4159,06 was due to the plaintiffs. This included rock excavation at one dollar per yard, the contract price. The plaintiffs claimed to recover for that item a large sum in addition to the one dollar per yard.

The referees found due to the plaintiffs the sum of $50,959,06, which included the admitted balance of $4159,06, and also the additional sum of $46,800 for rock excavation. In their special report they stated " that they had ascertained from the proofs

that the plaintiffs had been stopped by the defendants in the performance of the entire work; that by the contract between the parties the price of the rock excavation was fixed at one dollar per yard, which they had been governed by, taking together the whole quantity originally required to be excavated; that they had also ascertained the relative value of the quantity excavated and of the quantity not excavated, and on comparing such relative value they found there was due to the plaintiffs for the portion excavated the sum of $46,800."

The supreme court affirmed the decision of the referees, and after judgment for the sum reported, the defendants appealed to this court.

*J. T. Brady,* for appellants, insisted, among other [341] things, that the rule of damages adopted by the referees in reference to rock excavation was erroneous, even if the plaintiffs could recover at all. The damages, he said, were not allowed upon the contract, but upon the idea that the contract was rescinded. And if the contract was to be regarded as rescinded, it was rescinded *in toto.* The contractor therefore could recover only for the work actually done, either at the contract price or according to its actual value. The report should be set aside, if for no other reason, because the referees acted upon no clear and definite rule of damages, consistent either with the law or the justice of the case.

*S. Sherwood,* for respondents, cited *Water Commissioners v. Appleton,* (2 *Hill,* 433;) *Bailey* v. *The City of New-York,* (3 *id.* 538, 541, 2; *S. C.* 2 *Denio,* 439;) *Dubois* v. *Delaware and Hudson Canal Co.* (4 *Wend.* 288;) *Randall* v. *Van Vechten,* (19 *John.* 60;) 4 *Wend.* 290; *Bull. N. P.* 139; 15 *Wend.* 87; 10 *John.* 36; 12 *Wend.* 334; 16 *id.* 586.

PRATT, J. The counsel for the plaintiffs abandoned upon the argument all claim to recover upon the special count, and conceded that they must recover, if at all, upon the common count for a quantum meruit. Upon this count, therefore, two ques-

tions arise in the case, the first upon the right to recover, and the second upon the rule adopted for the assessment of damages.

Much of the apparent difficulty in this case results from the obscure manner in which the facts are stated in the special report. It is not easy to ascertain from the report the grounds upon which the plaintiffs' right to recover was placed in the court below, nor the rule adopted in assessing the damages.

The original contract with the water commissioners, if that should be allowed to have any influence in the case, gave them the right at any time to change the form or dimensions or materials of the work. It is clear, under this provision, that the commissioners were authorized to make any change in the di-[342] mensions of the work which they might deem proper, although by such change the excavation of rock or other materials might be very materially reduced from the original estimate. Nor would the contractors be entitled to additional compensation, although such change might have the effect to deprive them of the privilege of doing the easiest and therefore the most profitable part of the work. They took upon themselves this hazard by the terms of their contract.

But this provision, although it gave the commissioners power to direct in good faith any change in the form or dimensions of the work, did not authorize them to stop the work in an unfinished state, and thus arbitrarily annul the contract. And this was a question for the referees to determine, whether the commissioners simply varied the form or construction of the reservoir so as to make a less amount of excavation sufficient, or put an entire stop to the work, leaving the reservoir unfinished. Nothing but the conclusions of the referees is given in the report of facts, and if I understand the language of the report, the referees found in favor of the latter proposition. It is that "they have ascertained from the proof that the plaintiffs have been stopped by the defendants in the performance of the entire work." I infer from this that the defendants stopped the work before the job had been completed, and not that they concluded to change its form or dimensions so that less work was required than the original estimate contemplated. Whether the evidence before

the referees was sufficient to sustain this finding we have no means of ascertaining. If it was not sufficient, the error can not be corrected in this court, but it should have been corrected in the court where the action was pending.

On the question of damages the special report is more obscure, if possible, than upon the question just considered. It is clear that under the common counts the plaintiffs can not recover the same amount of damages which they might be entitled to recover in an action for a breach of the special contract. They must be confined, in this action, either to the price of the work stipulated in the contract, or the actual worth of the work done. When parties deviate from the terms of a special contract, the contract price will, so far as applicable, generally be the rule of [342] damages. But when the contract is terminated by one party against the consent of the other, the latter will not be confined to the contract price, but may bring his action for a breach of the contract and recover as damages all that he may lose by way of profits in not being allowed to fulfil the contract; or he may waive the contract and bring his action on the common counts for work and labor generally, and recover what the work done is actually worth. But in the latter case he will not be allowed to recover as damages any thing for speculative profits, but the actual value of the work and materials must be the rule of damages. He can not assume the contract price as the true value of the work necessary to complete the whole job, and then recover the proportion which the work done will bear to the whole job, although it may amount to more than either the contract price or the actual value. This would be allowing indirectly a recovery for speculative profits upon the common counts. If the party seeks to recover more than the actual worth of his work, in a case where he has been prevented from performing the entire contract, he must resort to his action directly upon the contract; but when he elects to consider the contract rescinded, and goes upon the quantum meruit, the actual value is the rule of damges. The injustice of any other rule is very apparent in this case. Several different kinds of work are specified in the contract, and a specific price per yard attached to each.

The plaintiffs have selected the rock excavation from the different kinds of work specified, and proved that the part performed was worth some three times as much per yard as the part remaining unperformed, and have recovered accordingly; although had all the different kinds of work specified in the contract been taken into consideration, it is quite probable that upon a general average of the work the part performed would be found no more difficult than that remaining unperformed. It is at all events quite clear, that justice could not be done without an investigation of all the different kinds of work specified. The contract is entire, and if it be resorted to at all as regulating the [344] damages, it should only be resorted to in connection with all the kinds of work specified therein.

This question then arises: what rule did the referees in fact adopt? The special report, in giving their final conclusion, says, " the price of the rock excavation was fixed at one dollar per yard, which they have been governed by, taking the whole quantity originally required to be excavated; that they have ascertained the relative value of the whole quantity excavated and of the quantity remaining not excavated; and comparing such relative value, they find there is due from the defendants to the plaintiffs, for the portion excavated, the sum of $46,800." Although this is any thing but a lucid statement, yet if it means any thing it must mean that the referees neither allowed the actual value of the work performed, nor the price per yard stipulated in the contract; but assuming the estimated quantity as the whole rock excavation, they ascertained its aggregate value at one dollar per yard. They then assumed that the part performed was worth some three times as much per yard as that remaining unperformed, and assessed the damages accordingly, assuming the average value of the whole work at one dollar per yard, making an aggregate of $150,000. By this means, it will be noticed that the plaintiffs were enabled to recover for some 66,000 cubic yards of excavation nearly $113,000, a much greater sum than the cubic yards actually excavated would amount to, either at one dollar per yard or at the price per yard which the excavation was proved to be worth. At the

former price the plaintiffs had received the whole amount due, into some $3483,49, which was conceded to be due; and at the highest prices proved for the work done, there would remain due some $34,088, a sum much less than the amount found due by the referees.

It is clear, therefore, whether I am right or wrong in the interpretation which I have given their report, that an error has been committed by the referees, for which the judgment of the supreme court should be reversed and a new trial ordered.

Judgment reversed.