(21 App. Div. 30.)

SIMMONS et al. v. OCEAN CAUSEWAY OF LAWRENCE, LONG ISLAND.

(Supreme Court, Appellate Division, Second Department. October 5, 1897.)

1. BUILDING CONTRACTS—BREACH—QUANTUM MERUIT.
   Plaintiffs contracted to do certain work for defendant by a fixed date. After partial performance by plaintiffs, the work was completed by defendant, claiming the right to do so under a clause in the contract giving it such right in case of certain defaults on plaintiffs' part. Plaintiffs gave evidence that all the money claimed to have been expended by them actually went into the construction of the work, and that it was a fair and reasonable amount for the services and materials. Held, that a charge that if plaintiffs were entitled to recover, and the expenditures were fair and reasonable, they might make the amount of them, less the payments already made to plaintiffs, the basis of recovery, was warranted.

2. SAME—INSTRUCTIONS—HARMLESS ERROR.
   The charge actually given omitted to limit the jury to "fair and reasonable" expenses, but the attention of the court was not called to the omission. Held no ground for reversal, since error is not predicable upon an inadvertence in the charge, which, it is apparent, would have been corrected if mentioned.

3. SAME—ACQUIESCENCE IN BREACH.
   After the contract was partially completed, defendant wrongfully gave plaintiffs peremptory notice that their men had quit work, and that defendant's engineer would finish the work, and he did so. Held, that plaintiffs' mere failure to protest was not an acquiescence in defendant's breach of the contract.

4. SAME—PERFORMANCE—EXTENSION OF TIME.
   The contract provided that, if plaintiffs did not furnish a sufficiency of men and materials to complete the work by a fixed date, it might, on three days' notice, be completed by defendant, and the expense·deducted from the agreed payments. Plaintiffs were ready to begin work, but were delayed about 20 days by defendant. Held, that plaintiffs thus became entitled to a reasonable extension of time for completing the work.

5. SAME—REQUIREMENT OF NOTICE.
   In view of the situation thus presented, notice of a time within which the work should be completed was essential to put plaintiffs in default in said respect.

6. SAME—CONSTRUCTION OF CONTRACT—PRICE.
   While plaintiffs were engaged in the work, they made a contract with third persons, who, with defendant's consent, thereby undertook part of the work for $3,600, with the understanding that they were to receive their pay directly from defendant. They began their work before, and completed it after, defendant took the principal work away from plaintiffs. They were paid by defendant. In the action, plaintiffs made no claim for this item, but defendant claimed it as an allowance against plaintiffs. Held, that no such allowance could be made.

7. SAME—BOND—LIENS—CONDITIONS PRECEDENT.

By a separate contract between plaintiffs and defendant, plaintiffs agreed to build a bridge; and it was further provided that no payment should be made until they should furnish a specified bond, and that they should not suffer the creation of liens, and that any such liens, until removed, should preclude any claim for payment. *Held,* that the bond and the freedom from liens were conditions upon which the right to payment depended.

Appeal from trial term, Queens county.

Action by James A. Simmons and Joseph Marrone against the Ocean Causeway of Lawrence, Long Island, for breach of contract. From a judgment entered on a verdict in favor of plaintiffs, and from an order denying a new trial, defendant appeals. Affirmed on condition.

The parties entered into a contract of date August 3, 1894, whereby the plaintiffs, constituting the firm of J. A. Simmons & Co., agreed to construct and finish, on or before May 1, 1895, a causeway from Cedarhurst avenue .to the outer beach at Cedarhurst, in the county of Queens, according to the drawings, plans, and specifications referred to, under the direction and to the satisfaction of the selected engineer of the defendant, and to be made to so appear by his certificate, for which the defendant agreed to pay to plaintiffs $12,500. For the purpose of payment, apportionment was made for the first section, stated to be 2,300 feet from the bay to Prospect avenue, for $5,000; for the causeway across the bay, about 1,000 feet, and the abutments at the bridge, $7,500; the engineer to make an estimate at the end of each fortnight, and certify the ratable value of the work done up to such time, and the plaintiffs should be entitled to receive the ratable value, less $1,000, during the progress of the work. The contract also provided that if, during the progress of the work, the plaintiffs should refuse or neglect to supply a sufficiency of materials or workmen, the defendant should have the power to provide them, after three days' notice in writing, to finish the work, and deduct the expense from the amount of the contract. The contract contained some other provisions referred to in the opinion. After the plaintiffs entered upon the performance of that contract, the parties entered into another contract, of date March 30, 1895, executed some time thereafter, whereby the plaintiffs agreed to construct a drawbridge and approaches thereto over the section of Rockaway Inlet on the line of the causeway, and connecting the two sections thereof before mentioned, for the sum of $1,200. This contract contained similar provisions to those in the contract first mentioned; and, further, that the plaintiffs should, at their own cost, procure from the war department of the United States the necessary permission for the construction and maintenance of the drawbridge. The plaintiffs also entered upon the performance of the work under this contract. Finally, the defendant took control of the work on the causeway from the plaintiffs.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Peter B. Olney, for appellant.

Charles D. Ingersoll, for respondents.

BRADLEY, J. The action is founded on an alleged breach of the contract by the defendant. The plaintiffs, by their complaint, charge: (1) That they, having nearly completed the work under the first or causeway contract, were, on or about June 29, 1895, prevented by the defendant from proceeding further in the fulfillment of it, and that the defendant had failed to make payments to which the plaintiffs were entitled. (2) That the plaintiffs had also nearly completed the work under the other or bridge contract when they, at the same time, were wrongfully prevented from proceeding fur-

ther with it, and that the defendant refused to pay them.   (3) That the plaintiffs performed extra work upon the causeway, for which they are entitled to recover.   (4) That they also performed extra work upon the drawbridge.

The alleged breach of the contracts on the part of the defendant mainly arises out of the fact that during the progress of the work, and on June 29, 1895, the defendant, by its president, addressed and sent to the plaintiffs a telegram, of which the following is a copy: "Your men quit work Thursday.   Have instructed Smith to finish road under your contract."   The name subscribed to the telegram was "Geo. C. Rand," who was such officer.   Thomas D. Smith was the engineer who had been selected by the defendant. This was Saturday, and thereafter the plaintiffs did no more work upon the causeway job; but the defendant, on the 2d day of July, took charge of it, and proceeded with its completion.   For that purpose, the men and tools theretofore in the service of the plaintiffs were employed by the defendant.   This taking the possession of the work to finish it, the defendant alleges, was pursuant to the provision of the contract to the effect that, in case the plaintiffs failed to supply a sufficiency of materials or workmen, the defendant should have the power, on three days' notice, to provide them, complete the work, and deduct the expense from the amount of the contract.   The defendant also alleges that the expense of its accomplishment exceeded the amount of the contract price remaining unpaid to the plaintiffs. Whether or not the defendant was, by any default of the plaintiffs, justified in taking the work from them, under that provision of the contract, was a controverted question of fact, upon which it must be assumed that the jury found against the defendant; and, although they would have been fairly warranted in finding otherwise, we think the conclusion of the jury in that respect was permitted by the evidence.   It is true, the time specified in the contract for the completion of the work had expired before the defendant took the control of it; and, if nothing chargeable to the defendant had intervened to permit the extension of the time of its performance by the plaintiffs, a different question would have been presented for consideration, since, in view of the purpose and contemplated use of the causeway, time may be deemed as of the essence of the contract.   But after the making of the causeway contract, and early in August, 1894, the plaintiffs, in the expectation of proceeding at once with the work, were prepared with shanties, men, and implements on the ground to do so, but were denied the right to commence, by notice from the defendant that legal obstacles then prevented the beginning of the work, which, it seems, were occasioned by a failure of the defendant to obtain the right of way through the meadow in the town of Hempstead.   This was not accomplished, so as to enable the plaintiffs to commence the work, before September 3d, when they entered upon its performance.   The consequences of this interruption and delay were the expenses of the transportation of the unemployed workmen, and their wages, and the loss of a portion of the better season for the work, which it was more difficult to perform in the late autumn and winter in that place.   It seems that in time of high

tide the plaintiffs were unable to work on the meadow lands there. The evidence of one of the plaintiffs tends to prove that at an interview with Mr. Rand, the president of the defendant, on the subject of the delay in the commencement of the work, the latter said that it was unavoidable, and that the plaintiffs should have an allowance of time to enable them to get the work done as soon as they could. There is also evidence on the part of the plaintiffs to the effect that a further obstructive delay in the work was occasioned by some of the directors of the defendant during its progress.

The jury were permitted by evidence to conclude that the defendant was not justified by lapse of time in taking the work from the plaintiffs. Following the conclusion of the jury that this was done by the defendant in violation of the contract, there arose, upon the evidence, questions of fact relating to the extent of the work which the plaintiffs had performed under the contract, including such as was denominated "extra work." The trial proceeded, and the case was submitted to the jury, upon the theory that the plaintiffs were entitled to recover the amount of money expended by them upon the work, less the amount paid to them by the defendant thereon. Of course, the amount chargeable and expended under the contracts could not exceed the compensatory sums provided for by them; nor is it claimed that the expense incurred in the performance of the work specified in the contracts exceeded such sums; but, including the expenditures for extra work on the causeway, the evidence on the part of the plaintiffs tended to prove that they amounted to $15,-519.16, of which the sum of $4,660 was expended for what the plaintiffs' evidence tended to prove was extra work. The plaintiffs received from the defendant, on account of their work on the causeway, $8,241.16. They also claim, and evidence on their part was given tending to prove, that the drawbridge was substantially completed by them prior to July 2, 1895, and that they had expended $1,300 in its construction; and, having received on account of that work $700, they claimed the right to the allowance of the further sum of $500, the residue of the contract price for the construction of the bridge, and the further sum of $72.40, for extra work. In addition to this, the plaintiffs claim by their evidence that the expenses incurred by them in consequence of the delay to which they were subjected, as before mentioned, in the outset, were $650, of which amount they were paid $340 by the defendant on that account. The matter of extra work which the plaintiffs claimed to have performed was the subject of controversy by the evidence; and the evidence on the part of the defendant was to the effect that the value of work done and materials furnished by the plaintiffs upon the causeway was only $9,448, and on the drawbridge $960, and that the defendant expended in completion of the causeway upward of $5,000 after taking possession of the work, and that the work to be done to complete the bridge and remedy the defects would cost $1,020. Of the sum so expended by the defendant upon the causeway, $3,600 were paid to Murray & De Mott, who, in May, 1895, by contract made with the plaintiffs, agreed to put three inches of loam and three inches of gravel upon the roadway, for the sum of $3,600. This contract was

made with the assent of the president, Rand, and with the understanding that Murray & De Mott were to receive their pay directly from the defendant. They commenced the performance of this contract before, and completed it ,after, the defendant took the control of the work from the plaintiffs. The engineer made no estimate of work done, and no certificate, after April 26, 1895, until July 5th. This, as represented by evidence on the part of the plaintiffs, was the subject of complaint by them.

The court charged the jury that if they found from the evidence that the "plaintiffs were not in fault, but that they prosecuted the work with reasonable diligence, and that the defendant unwarrantably, and without cause, as contemplated by the contract, took possession of the work, and excluded the plaintiffs from it, then the plaintiffs are entitled to recover the amount actually expended by them upon the work under the contract," less the amounts which they had received under it. Exception to this charge was taken by the defendant's counsel, who requested the court to charge that if the jury so found, and that the plaintiffs elected to rescind the contract, then the measure of damages claimed by them in the first cause of action was the actual value of what had been done under the contract, less payments made to them. This was declined by the court; and thereupon the defendant's counsel excepted, and made the further request to charge that "such actual value is not determined by what the plaintiffs have paid therefor, but by the testimony of those competent to value work of the kind and character in question." This was also declined, and exception taken. In such case the contractor may seek relief upon the quantum meruit for the work done, and such is a proper remedy. Clark v. Mayor, etc., 4 N. Y. 338. The purpose of the remedy in such case is to enable him to obtain indemnity, by way of damages, for the loss legitimately suffered by him in consequence of the breach of the contract; and there would seem to be reason for the support of the rule which will permit him to prove as the basis of damages what he has fairly and reasonably expended in the performance of or under the contract. U. S. v. Behan, 110 U. S. 338, 4 Sup. Ct. 81; Watts v. Board, 9 App. Div. 143, 41 N. Y. Supp. 141. This is a method of proving the value of the services and materials put into the work, and thus the expense of it, which in that sense may be deemed the value for the purposes of the remedy, and reimbursement of the party who has been wrongfully denied the right to complete the performance of his contract. In Kennedy v. McKone, 10 App. Div. 88, 41 N. Y. Supp. 782, cited by the defendant's counsel, claim for the work done by the defendant to complete the performance of the contract was not founded upon any breach of the contract by the plaintiffs, but upon the election by the defendant to perform it for them, and at their expense. It was there simply proved that the defendant paid out a certain amount. And, in the opinion of the court, Mr. Justice Barrett said that the mere fact of payment, standing alone, was not sufficient evidence of value. In the present case, evidence was given on the part of the plaintiffs tending to prove that all the money claimed to have been expended by them actually went into the con-

struction of the work, and that it was a fair and reasonable amount for the services and materials. Upon the evidence, therefore, the instruction of the court was warranted that if the jury found that the plaintiff was entitled to recover, and that the expenditures were fair and reasonable, they might make the amount of them, less that of the payments, chargeable to the plaintiffs, the basis of recovery. It is also urged by counsel, upon the exceptions taken, that the omission of that qualification in the charge was error. While it may be that the court did not include all the elements essential to so characterize the expenditures as to render them effectual for the purpose in view, it is quite evident that the court would have made the requisite addition if its attention had been called to it; and it is quite likely that the defendant's counsel would have done so if he had then, in his view of the question, given any consequence to such omission. But his exceptions were seemingly founded upon the proposition that the actual value of the work, as distinguished from the expenditures, was the basis for any recovery by the plaintiffs. Error is not properly predicable upon an inadvertence in the charge of a court which it is apparent would be corrected on suggestion.

It is urged with some force that the jury would have been warranted in finding that the plaintiffs acquiesced in the taking from them of the control of the work, and proceeding with it by the defendant, in such sense as to relieve the latter from the charge of breach of contract; but, in the view taken of the evidence, that contention is not supported. The plaintiffs were not asked to surrender, nor can it be said that they consented to do so, otherwise than by force of the notice, peremptory in character, that defendant's engineer had been instructed to finish the road, pursuant to which he did assume the control of the work. Neither resistance nor persistence to the contrary was necessary to nonassent. No view which can legitimately be given to the subsequent interview and communications had between the parties is deemed sufficient to have constituted a ratification by the plaintiffs of the action of the defendant, as taken pursuant to the contract.

The learned counsel for the defendant urges upon our attention the question arising upon the refusal of the court to charge that "if the jury find that up to June 29th was ample time to allow plaintiffs to finish the contract, and further find the work was not then completed, and plaintiffs at that time did not supply a sufficiency of materials or men, then, as the time when the work was to be finished was of the essence of the contract, the defendant was justified in doing what it did to complete the contract as soon as possible, to prevent as far as possible loss and damage to all concerned." If the rights and obligations of the parties were dependent solely upon the written provision of the contract, there would be no answer to such proposition. But, as has been observed, the delay of about 20 days in the commencement of the work was chargeable to the defendant; and the consequence was a right of the plaintiffs to a reasonable extension of time for its completion, which, it appears by evidence, was recognized by the defendant. The terms of the contract, in that, and no other, respect, were modified. In other words, the per-

formance of the contract within the stipulated time was waived, and extended for such time as was reasonable under the circumstances. And, in view of the situation thus presented, notice of a time within which the work should be completed was essential to put the plaintiffs in default in that respect. Lawson v. Hogan, 93 N. Y. 39, 44; Thomson v. Poor, 147 N. Y. 402, 12 N. E. 13; Sinclair v. Tallmadge, 35 Barb. 602; Darrow v. Cornell, 12 App. Div. 604, 42 N. Y. Supp. 1081. A different question would be presented if the plaintiffs, without any modification of the contract which operated as an extension of time, had, by the mere indulgence of the defendant, continued in the performance of the work after the expiration of the stipulated time for its performance. In such case, the defendant may, by reason of such default, have taken control of the work from them, although the plaintiffs, by reason of the waiver arising from such indulgence, may have been entitled to payment for that which they had performed. Wyckoff v. Taylor, 13 App. Div. 240, 43 N. Y. Supp. 31. The further stipulation of the contract, providing that, if the plaintiffs refused or neglected to supply a sufficiency of materials or workmen, the defendant should have the power to furnish them, and to finish the work, and charge the expense to the plaintiffs, remained effectual. But three days' notice in writing was, by the terms of the contract, required to enable the defendant to so assume the control of the work, pursuant to the contract. This provision was not observed in the notice of the 29th of June, and for that reason it did not appear that the defendant was proceeding under the contract, but as for an assumed default on the part of the plaintiffs. The court, however, elsewhere, in the charge to the jury, instructed them quite fully on the subject of the proposition so refused, and substantially in accordance with it slightly modified.

The question is raised whether or not the defendant was entitled to have allowed to it, against the plaintiffs' claim, the amount paid by the defendant to Murray & De Mott, for the work done by them under their contract made with the plaintiffs prior to June 29th. It is contended on the part of the defendant that it was, in any event, entitled to have such amount allowed in reduction of the plaintiffs' claim, because the subcontract was made by them with the consent of the defendant, and Murray & De Mott were to receive payment directly from it. The contract, therefore, remained effectual, notwithstanding the termination of the connection of the plaintiffs with the work. As the work which Murray & De Mott undertook to perform was a portion of that within the contract between the plaintiffs and defendant, the payment to them was apparently upon the latter contract for work performed pursuant to it. But the defendant had terminated the relation of the plaintiffs to the work with knowledge of the existence and effect of the contract with Murray & De Mott; and assuming, as we do, upon the finding of the jury, that such termination by the defendant of its contract was wrongful, it is not seen how the amount paid by the defendant to Murray & De Mott upon their contract could be made available as a counterclaim or set-off against the claim of the plaintiffs for work done by them under the contract. The work done by Murray & De Mott was not, nor

was the money expended in performing it, made the subject of claim by the plaintiffs. When the defendant, in violation of the rights of the plaintiffs under the contract, denied to them the right to proceed with its performance, it became liable to them for what they had done under the contract, or its equivalent. With what they had not done, the plaintiffs thereafter had no concern. Wright v. Reusens, 133 N. Y. 298, 307, 31 N. E. 215. The relation of the defendant to the plaintiffs in the Murray & De Mott contract was not that of surety in a nonbeneficial sense. The work was done for the defendant, and with it rested ultimately, if not primarily, the obligation to pay for it, under the contract with the plaintiffs. The payment of the $3,600 to Murray & De Mott was in no sense a payment for or on account of the plaintiffs, upon the assumption of fact, as found by the jury, that the defendant had wrongfully excluded them from the further performance of the contract. It has not been suggested, so far as I have observed, upon the trial or on the review that the plaintiffs could make a claim against the defendant for the work done by Murray & De Mott, or for the money reasonably expended by them in doing it; and, as no such claim has been made by the plaintiffs in this action, the matter of payment for such work requires no further consideration.

In the view taken of the subject of the cause of action, and of the alleged defenses, counterclaims, and set-offs relating to the causeway or road, as distinguished from the bridge, there was no error to the prejudice of the defendant in the rulings of the court at the trial. The contract for the construction of the drawbridge was made subsequently to that for the causeway, and was distinct from it, and the relief sought, founded upon the alleged breach of the bridge contract, is made the subject of a separate and distinct cause of action in the complaint. It may be observed that the notice of June 29th, to the plaintiffs, was that Smith (engineer) was instructed to "finish the road" under the contract. It is insisted by the plaintiffs' counsel that in the purpose and effect of this notice was included the bridge, as well as the causeway, because both were essentially united, and constituted parts of the same passageway. As the contracts were distinct from each other, the defendant was permitted to make the notice applicable to one of them only. It seems clear that the causeway was included in the term "road," used in the telegraphic notice. As manifested by the manner of expression, the reference in it was to a single contract. The appearance, therefore, was consistent with a purpose to terminate the plaintiffs' further performance of the causeway contract only; and such seems to have been the understanding of the matter. The engineer, Smith, testified that he "never at any time took charge of the bridge to complete the contract. We never touched the bridge. Mr. Simmons' man, the foreman, was down there, at work at the bridge, after the 2d day of July. He was there for two weeks or more." By letter to Mr. Rand, of date July 29, 1895, the plaintiff Simmons, in writing for and in the name of his firm, said: "I also desire to say that we have repeatedly called for our bridge contract left with your company, and without which we cannot put the bridge in working order, as it re-

quires a reference to the same." In answer to this letter, Mr. Rand, writing of date July 30, 1895, says: "I regret not being able to lay my hands on the bridge contract, but will make another effort to find same to-morrow. If you failed to retain a duplicate of the same, you have no one to blame but yourself." It therefore seems clear that the parties did not treat the notice as applicable to the bridge contract; and, consequently, the conclusion fairly required from the evidence is that it does not appear that the relation of the plaintiffs to the bridge contract or to the work under it was ever terminated by any act of the defendant. It follows that the plaintiffs' remedy for relief on account of the construction work of the bridge is upon that contract, and is dependent upon its performance. In that view, the plaintiffs were not entitled to recover on their second alleged cause of action, upon the evidence. They do not allege a complete performance of the bridge contract, nor does it appear that they sought or obtained a certificate of the engineer to that effect, as required by the contract. They have not delivered to the defendant the bond to the effect that the satisfactory operation of the bridge should continue for the period of two years, as also provided by the contract; and they suffered the creation of liens, which do not appear to have been removed from the bridge. Such bond and the non-execution of such liens were by the contract made conditions upon which the right to payment for the construction of the bridge depended. This question was raised at the trial, and, although the point was not there distinctly taken that the bridge work was not included in the terminating notice given by the defendant to the plaintiffs, the question to that effect was fairly within the exception taken on the part of the defendant.

The claim of the plaintiffs, founded upon the alleged breach of the bridge contract, and submitted for consideration upon the evidence, amounted to $572.40. Whether any or how much of it was allowed by the jury is not seen by the record, nor is it necessary to inquire in what manner they reached the conclusion represented by the verdict for $5,400. In the view thus taken of the case, the $170 alleged as matter of defense to the plaintiffs' second cause of action, and found to have been paid by the defendant to procure from the war department of the United States permission to construct the bridge over the inlet, requires no consideration, as that alleged cause of action is not supported by the evidence.

The judgment and order should be reversed, and a new trial granted, costs to abide the event, unless the plaintiffs stipulate to deduct from the recovery of damages $572.40; and in that event the judgment should be so modified, and, as modified, affirmed. All concur.