FERGUSON CONTRACTING CO. v. STATE.

(Court of Claims of New York.   January 7, 1911.)

1. STATES (§ 104*)—CONTRACTS—CONSTRUCTION—"NECESSARY."

The state made a contract with claimant for the improvement of a section of a canal, the improvement to consist generally in the excavation and protection of the sides of the canal between two points, and the construction of certain locks with the approaches and appertaining parts. The contract provided that "it is mutually agreed that the state reserves the right until the final completion and acceptance of the work to make such additions to or changes in the plans and specifications covering the work as may be necessary." *Held*, that alterations directed by the state, which changed the plan for the retaining wall at the head of a lock, extended the walls at the crossing of another canal, substituted a concrete lining for the puddle lining in the bottom of the canal between certain points, substituted concrete retaining walls for the pine docking of the canal at certain points, eliminated the puddling on the sides and on the bottom in certain places, raised the by-pass channel under a lock, and changed the specifications for crushed stone to be used in the concrete, were changes authorized by the contract.

[Ed. Note.—For other cases, see States, Cent. Dig. § 102; Dec. Dig. § 104.*]

2. STATES (§ 104*)—CONTRACTS—CONSTRUCTION.

In interpreting the clause of the contract relating to alterations, the nature of the work must be considered, its connection with other contracts providing for the construction of an extensive system of canals, and all the facts and circumstances connected with the work, and the impossibility in a contract of this character of perfecting the plans and specifications in every detail.

[Ed. Note.—For other cases, see States, Cent. Dig. § 102; Dec. Dig. § 104.*]

3. STATES (§ 104*)—CONTRACTS—CONSTRUCTION—"NECESSARY."

The word "necessary," as used in the contract, should not be construed as meaning indispensably requisite, and the construction of the clause in which it occurs is not to be limited to the particular contract in which the clause is found, as the contract is for only a portion of an entire improvement and must be construed in the light of the whole work, and it may be construed as meaning reasonably necessary, and the changes provided for as being those needful, requisite, or desirable, but not extravagant or wasteful of public funds, or made without the exercise of sound discretion, or arbitrary or such as substantially changed the nature or the cost of the work.

[Ed. Note.—For other cases, see States, Cent. Dig. § 102; Dec. Dig. § 104.*

For other definitions, see Words and Phrases, vol. 5, pp. 4705–4710; vol. 8, p. 7729.]

4. STATES (§ 104*)—CONTRACTS—CONSTRUCTION—QUESTION FOR JURY.

What changes are necessary in a contract by the state for the improvement of a section of a canal, within the meaning of a clause in the contract allowing the state to make "necessary" changes therein, is a question for the courts.

[Ed. Note.—For other cases, see States, Dec. Dig. § 104.*]

5. CONTRACTS (§ 170*)—CONSTRUCTION BY PARTIES.

The interpretation placed upon a contract by the parties is a sound criterion by which to determine what the contract means.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 753; Dec. Dig. § 170.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

**6. STATES (§ 107*)—CONTRACTS—BREACH.**

In a contract by the state for the improvement of a section of a canal, the state reserved the right to make such additions to or changes in the plans and specifications as might be necessary. The contractor declined to accept certain changes in the plans and specifications made by the state on the ground that they were a fundamental change in the contract, and the canal board canceled the contract and readvertised the remainder of the work under the contract and let it to another contractor. *Held*, that the first contractor was guilty of a breach of the contract in refusing to make the proposed alterations and could not enforce any claim until the work has been completed and it has been determined whether his act has caused the state any additional expense, under Barge Canal Statute (Laws 1903, c. 147) § 7.

[Ed. Note.—For other cases, see States, Cent. Dig. § 105; Dec. Dig. § 107.*]

Action by the Ferguson Contracting Company against the State of New York. Judgment for defendant.

Davies, Stone & Auerbach, for claimants.

Edward O'Malley, Atty. Gen., Daniel Brong, Deputy Atty. Gen., and Andrew Tuck, for the State.

RODENBECK, J. The claimant made a contract with the state of New York, April 3, 1905, for the improvement of a section of the Erie Canal adjoining the village of Waterford, consisting generally in the excavation and protection of the sides of the so-called Barge Canal from the Mohawk river to a point about a quarter of a mile west of the head of lock No. 3 and the construction of locks Nos. 2 and 3 with the approaches and appertaining parts, covering a distance of .91 miles. Thereafter, from time to time, with the assent of the claimant, alterations were made by the state in the plans and specifications until April 14, 1909, when the state directed certain alterations to be made known as "Alteration No. 7," which provided for changing the plan for the retaining wall at the head of lock No. 2, extending the walls at the crossing of the Old Champlain Canal and forming a junction with the sides thereof, substituting a concrete lining for the puddle lining in the bottom of the canal between certain points, substituting concrete retaining walls for the pine docking of the canal at certain points, eliminating the puddling on the sides and on the bottom in certain places, raising the by-pass channel under lock No. 3, and changing the specifications for crushed stone to be uesd in the concrete.

The explanation contained in the alteration order for these changes made by the state is that the section of the canal at the head of lock No. 3 had become eroded by the flow of water in Cemetery creek; that this erosion had taken place along the line of the retaining wall on each side of the canal; that it would be necessary to carry the foundation of these walls to a lower level so that the base of the wall would rest on undisturbed material; that at the crossing of the present Champlain Canal the sides of the new canal had not been carried sufficiently far to form a good connection with the bulkheads and the masonry wall of the old canal; that a slight extension thereof

became necessary; that the puddle lining which was provided by the original plans in a certain section in the bottom of the canal was not sufficient to prevent seepage through the sand and gravel through which the channel had been excavated; that the clay puddle lining would be subjected to erosion from the action of the water stirred up by the propellers of boats; that a concrete lining nine inches thick had been substituted in a certain part of the canal to provide against such seepage and erosion; that the pile docking which was called for by the original plans in a certain section of the canal was subject to decay and would require renewal every few years; that it was thought desirable to substitute a concrete retaining wall on each side. of the channel through this portion of the canal; that the clay puddle lining had been provided on the sides and bottom of the canal in certain sections where the excavation was deep and the material in the bottom compact; that it was thought unnecessary to retain this lining for the purpose of preventing seepage, and it had therefore been eliminated; that the original plans required that a by-pass channel around Lock No. 3 should be excavated to about the grade of the canal below the lock which would make a wide deep channel which would always be full of water adjacent to the lock; that it had been thought desirable to raise the grade of this by-pass so that the bottom would be above the normal water level and to provide a concrete retaining dam at the lower end where the water dropped to a lower level; that it had been demonstrated that the best stone for making concrete was that in which the proportion of small particles was sufficient to reduce the voids to a minimum; and that it was thought desirable to allow the use of all particles of stone greater than one-eighth of an inch in diameter, instead of, as called for by the specifications, one-half inch in diameter.

The amount of estimated work under the contract including alteration order No. 7 and prior orders was $946,105.76, and the amount of work excluding order No. 7 was $906,896.26. Alteration order No. 7 added work amounting to $74,848.90 and decreased work amounting to $35,639.49, so that there was an actual increase in the work amounting to $39,209.50.

The claimant was unwilling to accept the alterations in the plans and specifications proposed by "Alteration Order No. 7," claiming that they constituted a fundamental change in the contract and declined to accept them, whereupon the canal board on May 13, 1909, canceled the contract and readvertised the remainder of the work under the contract and let it to another contractor.

The case turns upon the construction of. the contract, and particularly of the clause relating to alterations as bearing upon the question as to whether or not the state had the right under its contract to require the claimant to make the proposed alterations.

The clause in the contract relating to alterations reads as follows:

"It is mutually agreed that the state reserves the right until the final completion and acceptance of the work, to make such additions to or changes in the plans and specifications covering the work, as may be necessary, and no claim shall be made by the contractor for any loss of profits because of any such change or by reason of any variation between the quantities of the approximate estimate and the quantities of the work as done."

The changes made in the work were authorized by the express language of the contract. Daly v. Busk Tunnel Ry. Co., 129 Fed. 513, 64 C. C. A. 87. In interpreting the clause of the contract relating to alterations, the nature of the work must be considered, its connection with other contracts providing for the construction of an extensive system of canals, and all the facts and circumstances connected with the work. Woodruff v. Woodruff, 52 N. Y. 53. The clause should not be construed as similar clauses are construed in contracts wherein all the details can be specified. In a contract of this magnitude the state cannot anticipate all of the natural conditions that may arise when the work is undertaken or perfect its plans and specifications in every detail. Greater latitude must be allowed in contracts of the extent of this one, and the language is broad enough, under the circumstances, to permit of all necessary changes. The changes which have been made appear to have been required for a complete and perfect construction of the work and come within the clause of the contract authorizing alterations to be made by the state. Williams v. Chicago, S. F. & C. Ry. Co., 153 Mo. 487, 54 S. W. 689; Smith v. Sanitary District of Chicago, 108 Ill. App. 69; Reiss v. Scharner, 87 Ill. App. 84; Kingsley v. City of Brooklyn, 78 N. Y. 200.

The word "necessary," as used in the clause in the contract relating to alterations, must be construed in connection with the contract and the general improvement of which the contract formed a part. The work in process of construction by the state was a barge canal improvement of great extent of which the contract in this case formed a small section. The relation of this contract to the entire improvement is like that of a contract for a portion of a building to the construction of the entire building. A clause in a contract for only a portion of the entire improvement must be construed in the light of the whole work. Its construction is not to be limited to the particular contract in which the clause is to be found, since changes may be required because of the necessities of other parts of the work.

The word "necessary" is susceptible of various meanings and should not be construed in this case as meaning indispensably requisite. There are degrees of "necessity." A thing or purpose may be necessary, more necessary or indispensably necessary. The term sometimes means conducive to or needful or requisite for. It also means "reasonably" necessary. Changes are not reasonably necessary when they are extravagant or wasteful of public funds or made without the exercise of a sound discretion or arbitrarily made without the exercise of any judgment or fundamental constituting a substantial change in the nature or cost of the work so as to amount to a new contract upon which the minds of the parties did not meet. What is a reasonable change must be left to the courts in each instance. Chancellor Kent construed the term "necessary" as it was used in a statute authorizing the appropriation of land for canal purposes. He said:

"The word 'necessary' does not mean absolute and indispensable, or that without the use of the land, in the given case, the work could not possibly go on. That would be the same as extreme necessity. The Legislature used the word in a more reasonable and popular sense. It is sufficient that the land used, and the materials taken from it, are needful, and conducive to

the object, and more convenient in the application and less valuable, and the use of them less injurious to the owner, than any that might readily be selected." Jerome v. Ross, 7 Johns. Ch., at page 340, 11 Am. Dec. 484.

Under this and other authorities the word "necessary," as used in this contract, is not to be construed as meaning changes without which the completed work could not be made, but as meaning such changes as were needful, requisite, or desirable, subject to the limitations above stated. See Words and Phrases.

In this case there was no substantial change in the nature of the work or in its cost. All of the work called for by the alteration order was of a character upon which the claimants had submitted a unit price, so it cannot be said that any new work was introduced, as occurs, for instance, where there is a change to some class of work upon which there is no unit price stipulated in the contract. The changes made by the alteration order were matters of detail when the amount and character of the work called for by the contract is considered, and the small part that this contract plays among many others which will involve the expenditure by the state of many millions of dollars. The elimination of the puddle lining, the change from puddle lining to a cement lining, the change from the pine docking to cement docking, and other changes called for by the alteration order, do not constitute a change in the nature of the work, and there was no substantial change in the cost of the work. The proposed alterations increased rather than decreased the cost of the work.

These alterations were not "fundamental" as that term is employed to limit the changes that can be made under the clause in contracts relating to alterations. There is no hard and fast rule that can be laid down to determine what is a fundamental change in a contract. The instances grade from unimportant changes in matters of detail to important alterations which constitute a new contract. It is a matter of judicial opinion into which class a particular case falls. No amount of legal learning or experience can define the variations in statutory form, and the limitations must be left to the greater flexibility of the common law.

In McMaster v. State, 108 N. Y. 542, 15 N. E. 417, two contracts were let by the state to the same persons for the construction of certain buildings, one for furnishing stone and the other for cutting stone. The former contained no clause relating to changes, and the latter contained a clause reserving the right to make any change that shall be deemed "proper in the plans and specifications of said buildings." The buildings were to be constructed of sandstone, and after some of them were finished the state changed the plans so that the remainder should be built of brick with sandstone trimmings, and later on some of the buildings were cut out entirely. The contractor leased a quarry and prepared to construct the buildings as specified of sandstone, and the court held that the change from sandstone to brick with sandstone trimmings and cutting out of some of the buildings constituted a breach of the contract by the state. In this case the change was purely arbitrary, and the court held that the changes made and the omission of buildings from the contract did not come

within the reservation contained in the contract. The change was a substantial one not only in the nature but in the cost of the work.

In National Constructing Co. v. H. R. R. Water Power Co., 192 N. Y. 209, 84 N. E. 965, the plaintiff had constructed a masonry dam, and while the work was in progress it was discovered that the bed rock on which the river section of the dam was to rest lay at a greater depth than was anticipated which would result in a great increase of the cost of construction. In view of this increased expense, the defendant sought to substitute an earth dam with a masonry core, and it was held that this change, in view of the fact that the plaintiff was to be paid in the bonds of the defendant, constituted a breach of the contract. The clause in the contract authorized the defendant to make "alterations in the line, grade, plans, form, position, dimensions, or material of the work herein contemplated or any part thereof either before or after the commencement of the construction." The proposed change required a large amount of earth embankment which was not called for by the original contract and for which no price whatever was fixed and reduced the masonry to a very large extent. The change sought to be made in this case was not necessary, essential, or needful, but one that was made to save expense, and an important consideration in deciding the case was the fact that the contracting company was to be paid in the securities of the water power company.

In the case of Clark v. Mayor, etc., of New York, 4 N. Y. 338, 341, 53 Am. Dec. 379, among other questions discussed by the court is that of the power of the city to make changes under a clause reserving the right to make alterations in the form or dimension of the work. Upon this branch of the case, Pratt, J., says:

"The original contract with the water commissioners, if that should be allowed to have any influence in the case, gave them the right at any time to change the form or dimensions or materials of the work. It is clear, under this provision, that the commissioners were authorized to make any change in the dimensions of the work which they might deem proper, although by such change the excavation of rock or other materials might be very materially reduced from the original estimate. Nor would the contractors be entitled to additional compensation, although such change might have the effect to deprive them of the privilege of doing the easiest and therefore the most profitable part of the work. They took upon themselves this hazard by the terms of their contract."

In County of Cook v. Harms, 108 Ill. 151, the contract provided that, if "any additions, changes or alterations" should be made, "such changes, additions or alterations" should not invalidate or impair the contract, but should be paid for as extra work; but, instead of proceeding under this clause, the county board, after the work had commenced, rescinded its action approving the plans and provided and adopted new plans in their stead.

In Daly v. Busk Tunnel Ry. Co., 129 Fed. 513, 64 C. C. A. 87, one of the questions in the case was the right of the railway to enlarge the area or cross-section of a tunnel under a clause in the contract giving the company the right to make such "changes in the amount, dimensions or character of the work to be done, as in the opinion of

the chief engineer the interests of said work or of the company may require." With reference to this language the court said:

"Indeed, we can scarcely conceive that a company engaged in constructing a tunnel nearly two miles in length through a high mountain, and being at the time ignorant of the character of the materials and the obstructions which it might encounter, would deliberately agree that the size of the bore should not be increased even a few inches. It is customary, so far as we have observed, for companies which are engaged in the prosecution of such great enterprises as the one in hand to reserve a large power of control over the work, as well as the right to make such reasonable changes in the original plans for doing the same as the circumstances of the case may demand; but, whether customary or not, the power in question was reserved by the tunnel company in the clearest language by the contract which it entered into with Keefe, the provision being that it should 'have the right to make such changes in the amount, dimensions or character of the work to be done as in the opinion of the chief engineer the interests of said work or of the company may require.'" At page 518 of 129 Fed., at page 92 of 64 C. C. A.

Taking these and other cases as a guide, it cannot be said that the changes in this contract are so radical as to constitute a fundamental change. The alterations were of a character of work upon which the claimant bid, and unit prices were named in the contract for the class of work called for by the alterations, and it cannot be said that the alterations substantially changed the nature or cost of the work, constituted new work, or amounted to a new contract upon which the minds of the parties did not meet. Under every rule laid down by the cases, the proposed alterations would not appear to come within the ban of judicial disapproval.

To give the term as used in this contract any other construction than that above indicated would seriously interfere with the execution of the contracts for the construction of the Barge Canal. If the term is to be given the meaning of indispensably necessary, it might prevent the state from making even incidental changes in detail and would certainly interfere with many other changes that do not substantially affect the rights of the parties and yet are not absolutely required by the necessities of the work. The term must have a reasonable construction, and such a construction would authorize the state to make the changes made by alteration order No. 7, some of which at least were absolutely necessary, and others of which were conducive, if not essential, to a more perfect piece of work.

This was one of the first contracts for the construction of the Barge Canal let by the state, and the plans for the entire canal had not been formulated. There was a good deal of delay from one cause or another during the performance of the contract. The site of the line of the canal was crossed by city streets and by a railroad and was occupied by several city houses. Some litigation arose over the railroad crossing, and there was some delay in removing the houses. More than the usual changes in the contract were made and assented to by the contractor. An extension of time was given for the performance of the work. At the time of the submission of the last alteration order, the greater part of the contract had been performed, and, in view of the fact that this alteration order increased rather than decreased the amount of work, it would seem that it was used as a pre-

text for some reason not made clear to the court for the refusal by the contractor to proceed with the work. It is also significant that no claim is made here for loss of profits on uncompleted work, but merely for delays and damages to work which has been performed upon which the court does not pass, but many of which seem to have been an afterthought when the filing of this claim was contemplated.

The interpretation here given to the contract is supported by the practical construction placed upon its terms by the parties themselves. Prior to this proposed alteration, six other alteration orders had been made respecting this contract under the clause permitting alterations to be made. Alteration No. 1 provided for the widening of the locks included in the contract made pursuant to a statute passed subsequently to the making of the contract, which statute changed the width of the locks as provided for in the original Barge Canal act. This alteration increased the cost of the contract by $82,015. Alteration order No. 2 provided for certain changes made necessary to afford a better support of the timber attachment to the concrete retaining wall and substituted second-class concrete for first-class concrete. This alteration decreased the amount of the contract by $23,795. Alteration order No. 3 provided for certain minor changes in the approaches to the Fourth Street Bridge in the village of Waterford and decreased the amount of the contract $35.24. Alteration No. 4 provided for enlarged abutments for the Saratoga avenue crossing at Waterford and increased the contract by $1,562. Alteration No. 5 reduced the thickness of the concrete floor of lock No. 2 and excluded the concrete lintels over the lower end of locks 2 and 3 and provided handrailings on the stairways of locks 2 and 3 decreasing the contract by $9,932. Alteration No. 6 provided for changes in the form of gate recesses, gate anchorages, operating machinery recesses, and also provided for cast-iron quoin plates in locks Nos. 2 and 3 increasing the contract by $4,751. In all of these cases agreements were made between the state and the claimant for the changes which aggregated $122,090.24.

After having accepted these alterations, thus placing its own interpretation upon the language of the clause in the contract relating to changes, claimant was unwilling to accept changes proposed in alteration order No. 7, though it increased the work by only $39,209.50 and did not substitute any new items or change the character of the work called for by the contract, claiming that it constituted a fundamental change in the contract, and declined to accept the alterations.

The interpretation placed upon the contract by the parties has always been held to be a sound criterion by which to determine what the contract means. The courts have repeatedly held that "there is no surer way to find out what the parties meant than to see what they have done." Jacquin v. Boutard, 89 Hun, 437, 35 N. Y. Supp. 496, affirmed 157 N. Y. 686, 51 N. E. 1091; Sattler v. Hallock, 160 N. Y. 291, 54 N. E. 667, 46 L. R. A. 679, 73 Am. St. Rep. 686; Chicago v. Sheldon, 9 Wall. 50, 19 L. Ed. 594; Topliff v. Topliff, 122 U. S. 121, 7 Sup. Ct. 1057, 30 L. Ed. 1110; Insurance Company v. Dutcher, 95 U. S. 273, 269, 24 L. Ed. 410; Woolsey v. Funke, 121 N. Y. 87,

24 N. E. 191; Dodge v. Zimmer, 110 N. Y. 43, 17 N. E. 399; Nicoll v. Sands, 131 N. Y. 24, 29 N. E. 818; Seymour v. Warren, 179 N. Y. 1, 71 N. E. 260; Winne v. Mehrbach, 130 App. Div. 329, 114 N. Y. Supp. 618. In Sattler v. Hallock, supra, in construing a contract the court said:

"We may resort to the surrounding facts and circumstances as they existed when it was made to aid us in its interpretation and also consider the practical construction which the parties have given it."

In Chicago v. Sheldon, supra, the court said:

"The practical interpretation of the parties themselves is entitled to great if not controlling influence. * * * But in an executory contract and where its execution necessarily involves a practical construction, if the minds of both parties concur, there can be no great danger in the adoption of it by the court as the true one."

Under the terms of the contract and the construction placed upon it by the parties, the claimant was guilty of a breach thereof in refusing to make the proposed alterations, and is not in a position to enforce any claim that it has until the work has been completed and it has been determined whether or not the act of the claimant has caused the state any additional expense. Barge Canal St. (Laws 1903, c. 147) § 7.

The claim therefore should be dismissed.