CROUCH *et al. v.* GUTMANN. (No. 1.)

GUTMANN *v.* CROUCH. (No. 2.)

(*Supreme Court, General Term, Fifth Department.* June 20, 1890.)

REFERENCE—VIEW BY REFEREE.
　　Where, by consent of parties, the referee inspects the premises which are the subject of the action, he may construe the testimony adduced before him in the light of the information obtained by the inspection, and it cannot be objected that his finding is unsupported by the evidence.

Appeal from judgment on report of referee.

Action No. 1 is by George W. Crouch and Frank P. Crouch against Max L. Gutmann, and No. 2 is by Max L. Gutmann against Frank P. Crouch. Max L. Gutmann is appellant in both cases.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*S. D. Bentley,* for appellant. *Fanning & Williams,* for respondents.

CORLETT, J. On the 28th day of September, 1886, John Strachen, a mason and contractor of the city of Rochester, entered into a written agreement with Max L. Gutmann, of the same place, to build and finish a four-story brick block and apartment-house in the city of Rochester, in pursuance of drawings, details, and general specifications made by James C. Cutler, an architect. The building was to be completed by the 1st day of April, 1887; the price, $16,500, to be paid in installments to the amount of 80 per cent. as the work progressed, and the balance on the proper completion of the work,—payments only to be made on the architect's certificate. All the drawings or specifications are either embodied in, or referred to in, the agreement. On the same day John Wadsworth & Son, contractors of the village of Brockport, entered into a written contract with John R. Strachen to construct the carpenter work of said building for the sum of $6,000; payments to be made as the money should be received by Strachen from Gutmann on his contract, and on the architect's certificate. The drawings and specifications of the original contract were referred to as a part of this. The job was to be finished at the same time. On the same day Frank P. Crouch executed a bond to Strachen for $6,000, the condition of which was that, if Wadsworth & Son should in all things perform their contract, the agreement should be void; otherwise in full force. The plaintiffs in No. 1 brought the action to recover a balance alleged to be due of $1,650 on the $6,000 contract, over and above all payments. It is alleged this claim was assigned to the plaintiffs by the Wadsworths. It is also alleged that on the 27th day of June, 1887, the Wadsworths made and delivered to the plaintiffs an order of which the following is a copy: "ROCHESTER, N. Y., June 27th, 1887. *Max L. Gutmann:* Please pay to G. W. & F. P. Crouch sixteen hundred and fifty (1,650.00) dollars, and charge the same to our contract. [Signed] JOHN WADSWORTH & SON." This was accepted in the following form: "AUG. 6, 11:30 A. M. This order is accepted, payable out of any balance which may be due Messrs. Wadsworth & Son when the building is completed, to the extent of such unpaid balance, and no

more, and on the architect's certificate only. [Signed] MAX L. GUTMANN."
It is alleged that the order or paper as accepted was assigned to the plaintiffs.
The defendant denied performance by Strachen and Wadsworth & Son, and
asked a dismissal of the complaint. In No. 2 the plaintiff seeks to recover
the amount of the bond, upon the claim of non-performance by Wadsworth &
Son. The complaint alleges an assignment by Strachen to the plaintiff, and
further states Wadsworth & Son did not perform, and that thus Strachen was
prevented from performing. The answer alleges substantial performance,
and asks a dismissal of the complaint. Both cases were referred to the same
referee. In No. 1 the referee reported $633.67 for the plaintiffs. In No. 2
the complaint was dismissed. Judgment was entered by the successful party
upon each report, and the defendant in No. 1 and plaintiff in No. 2 appealed
to this court.

As the rights of all the parties depend upon the same questions, the cases
were practically tried as one action, with a stipulation that the testimony in
one case, so far as applicable, should apply to the other. In No. 1 the referee
finds the contracts, and that on the 5th day of August, 1887, Strachen served
written notice to make no further payments to Wadsworth & Son. That the
Wadsworths commenced work on the building about the 1st of November,
1886, and on the 1st day of February, 1887, stopped work at the instance of
the architect, and also on account of inclement weather. At this time the
roof was on the building. Work was after that resumed, and continued until
the 30th day of July, 1887, when it ceased. A strike in April caused a delay
of two weeks, and there were some other delays. That Strachen substan-
tially performed the work on his part, and that he was paid, from time to
time, $8,500.45, which, with the $6,000 contract, and the amount allowed for
deductions, equaled the contract price, $16,500. The referee also finds that
the Wadsworths substantially performed their contract, except in certain par-
ticulars, in which they were guilty of no willful or intentional violation of
their contract; that the work not performed by the Wadsworths was of the
value of $145. He also found that, by arrangement, the defendant furnished
the Wadsworths hardware to the amount of $293.64; also tile of the value of
$140.50, and $14 for iron pipe; also $12 for iron transom guards. That they
performed extra work to the amount of $260. That the walls of the building
settled, affecting the carpenter work, for which the Wadsworths were not to
blame, it being due to the settling of the walls, and shrinkage. That the ma-
terials furnished by the Wadsworths were in accordance with the terms of
their contract, except in the case of shelving and closets and maple flooring
for the halls, part of which was second-rate material. That the Wadsworths
stopped work on the building in July, 1887, and did nothing further upon it.
That at that time there were defects in the bath-room, on the hard wood
floors, in piecing casings on windows in the rear of the building, in defective
hand-rails of the front stairs, moulding in some portions of the building not
being planed smooth, and improper painting of the building in the front part.
That it would cost, to remedy all defects, $203, which was deducted from
the contract price. That, after the Wadsworths stopped work, the defendant
had the keys, and took possession of the building on the 21st day of Septem-
ber, 1887, and has since occupied the same. That after April 1, 1887, Strachen
and the Wadsworths continued work, with the knowledge and consent of the
defendant, and that the architect visited and inspected the same, and made
various estimates for payment on the contract. That the defendant made
payments up to the 22d day of June. That the payments actually made to
the Wadsworths were $2,369. That, in addition thereto, the defendant ac-
cepted an order for $500. That there should be added to the contract price
$266 for extra work. That the deductions to which the defendant was en-
titled were $293.64 for hardware; $148.50 for tiling; $26 for iron pipe;
$439.29, amount of J. B. Pike's bill; $148, an omission by consent of defend-

ant; $203, cost of repairing defects not repaired by Pike,—amounting to $1,258.43, which, added to the amount of payments, made $4,369, leaving a balance due on the contract and extras of $633.67. The order of June 27th was given to the plaintiff for lumber which was furnished to the Wadsworths, and used in the erection of the building. The plaintiff had requested the architect for a certificate, but he had refused to give one, and that such refusal was unjust and unreasonable. That the plaintiffs or the Wadsworths did not receive notice to complete the job. That Strachen and the architect had a settlement on the 8th day of August, 1887. That on this settlement the $6,000 was deducted from the contract price of $16,500, and also $1,499.55 for damages under the contract, which included $1,300 for lost time. That the assignment to the plaintiffs was for a valuable consideration. The findings in No. 2 were substantially the same as those in No. 1, with the additional finding that no consideration was paid to Strachen for the assignment of said bond. It was stipulated that the referee might inspect the building, which he did. It thus appears that before the 1st day of August, 1887, the defendant paid Strachen $8,500.45; and that afterwards, and on the 8th day of August, a settlement was made with him, the architect taking part, in which he was charged with $1,499.55 as stipulated damages under his agreement, which included $1,300 for 130 days' delay from April 1st to August 8th. The $6,000 agreed to be paid to Wadsworth & Son for carpenter work was also deducted. Some payments before that had been made to the Wadsworths. Action No. 1 was brought to recover the balance due under their contract, which had been assigned to the plaintiffs in that action. After the settlement with Strachen, he assigned the bond to the plaintiff, who brings action No. 2 to recover against the obligor in that instrument its amount; in other words, an amicable arrangement was made between the original parties to the contract, by which payment in full was made, less $1,499.55. It would seem to have been a part of that arrangement that the bond should be assigned to the plaintiff in No. 2.

All controversies between the original contractors are eliminated from the case, and a consideration of what occurred under the contract, or whether it was performed, is only important as it affects the parties to these actions. It must be assumed that the stipulation that the referee inspect the building was intended to aid him in weighing the evidence before him, as well as secure the information an inspection would impart, in the absence of any limitation as to the uses which the referee might make of a personal examination. In support of his findings, he was not restricted to what he discovered or actually viewed, but he was at liberty to construe the testimony in the light of the information thus obtained. In *West* v. *Kiersted*, 15 Wkly. Dig. 549, it was held that "where, by consent of parties, the referee inspects the premises in dispute, his report must practically be conclusive on all those facts which came within his observation; the court cannot tell what he saw." To the same effect is *Claflin* v. *Meyer*, 75 N. Y. 260. The exceptions, therefore, based upon the assumption that certain findings are against or without evidence, are not available.

The substantial question upon which these appeals depend is based upon the referee's findings. The learned counsel for the appellant contends that those findings negative the claim of a substantial performance, and would defeat a recovery in No. 1, and secure a different result in No. 2. The case shows that all the parties treated the original contract as so far completed that the defects might be paid for by deducting their cost from the contract price. This was the theory upon which the parties proceeded in their settlement. If it should be claimed that the expectation of recovering full damages for non-performance from the obligor in the bond was one of the elements which produced the settlement, the natural answer would be that it cannot be assumed on these appeals that the appellant contemplated an injus-

NEW YORK SUPPLEMENT, vol. 10. [Sup. Ct.

tice to the bondsman as one of the conditions of settlement between the par-
ties to the original contract. Such a contention by the appellant ought not
to aid him in securing a reversal. The findings of the referee clearly show
that the Wadsworths were less in default in performing than Strachen, and
that the omissions on their part should be paid for by deductions, as well as
in the case of the original contractor. Aside from this, the plaintiff in No. 2
had no contract with the Wadsworths. The moment he dealt with the orig-
inal contractor in settling with him on the assumption of a substantial per-
formance, it must be treated as relating to the whole contract. No reason is
seen why he should be allowed to sever the part to be performed by the
Wadsworths from that to be completed by the original contractor. It would
involve an obvious inconsistency on the part of the plaintiff in No. 2 to in-
sist that he could treat the contract as performed to a sufficient extent as to
allow the defects to be paid for, and pay the contractor the balance, and that
he could take a different position with a subcontractor with whom he had no
contract. The contract, so far as it applies to the plaintiff in No. 2, was en-
tire. It would not be harmonious or logical to insist upon one remedy as to
a part of the contract, and an inconsistent one as to the balance. The con-
clusions of the referee, as a whole, seem to have been substantially just and
equitable, and the exceptions do not seem to warrant a reversal of either
judgment. Judgments must be affirmed. All concur.