(38 Misc. Rep. 136.)

### O'DWYER v. SMITH.

(Supreme Court, Appellate Term. May, 1902.)

1. QUANTUM MERUIT—RESCISSION OF CONTRACT.
    Where a contractor cancels a written contract for work and labor against the wishes of his subcontractor, the subcontractor may waive the contract, and sue on a quantum meruit for the work and labor actually done.

2. SAME—TENDER OF PAYMENTS MADE.
    Where a contractor canceled a written contract against the will of his subcontractor, the latter need not, before suing on a quantum meruit, tender the contractor what he had been paid already, but it is sufficient if he credits such payments.

3. CONTRACT—WAIVER OF STIPULATIONS.
    A contractor may waive stipulations in contract with a subcontractor that he will pay only a certain sum weekly.

4. SAME—RIGHT TO CANCEL.
    Where a contract between a contractor and a subcontractor provides for weekly payments in a certain amount, and the contractor agrees by parol to increase such payments if the subcontractor will put on more men, and the sum subsequently paid the subcontractor is insufficient to pay for the labor of such extra men, and they strike for one day only, the contractor is not justified in canceling the contract under a provision authorizing him so to do if the subcontractor should get behind in his portion of the job.

Appeal from municipal court, borough of Manhattan, Eleventh district.

Action by Michael O'Dwyer against Arthur D. Smith, trading as George W. Smith & Co. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before FREEDMAN, P. J., and TRUAX and GILDERSLEEVE, JJ.

Parker & Aaron, for appellant.
C. S. Petrasch, for respondent.

PER CURIAM. The action is for work, labor, and materials furnished by plaintiff to defendant. The answer is a general denial and breach of contract. The case was tried before a justice of the

municipal court, without a jury, and judgment given for plaintiff in the sum of $447.47, damages and costs. Defendant appeals.

The plaintiff entered into a contract with defendant to do certain carpenter work, and furnish the necessary labor and materials therefor, at plaintiff's own cost and expense. Defendant agreed to pay for the work the sum of $1,600, partly in weekly payments not exceeding $150, and the final payment upon a full compliance with the contract. The work was to be completed on or before December 1, 1901. Through no fault of plaintiff, a strike occurred on November 9, 1901, and lasted until December 14, 1901, when defendant came to an arrangement with the men. The strike was caused by the acts of defendant, and the negotiations were carried on for a settlement by defendant's agent, to the exclusion of plaintiff. The fact that the time for the completion of the contract expired during the strike cannot be allowed to militate against the plaintiff under the circumstances here disclosed, and this is conceded by defendant. The work proceeded from December 14, 1901, to December 31, 1901, when the defendant canceled the contract. Defendant's reasons for canceling the contract are founded, according to his contention, on the following facts, viz.: On or about December 28, 1901, a check for $178 was sent by defendant to plaintiff, with the suggestion that it be used to pay the carpenters their weekly wages. Part of it was so applied, but not enough to pay the carpenters in full, and, as a result, they struck against plaintiff, and refused to proceed with their work until paid in full. At great inconvenience, and some expense, according to defendant, the agent of defendant came on from Philadelphia, where defendant's office or place of business is situated, met the plaintiff, and called upon him to pay the men under the contract, or have the contract canceled. Plaintiff refused, and defendant was compelled to pay the men himself $150 in order to have the work continued, and suffered the loss of a full day's work. Thereafter, and on December 31, 1901, he wrote a letter to plaintiff, canceling the contract under the following clause:

"If M. O'Dwyer shall get behind in his portion of the job, so as to prejudice the probability of the said Geo. W. Smith & Co. being able to finish in the time designated, or if he shall do bad work, it shall be lawful for the said Geo. W. Smith & Co., at their option, either to put on such men and to supply such labor as shall be needed, at the expense of the said M. O'Dwyer, or to cancel the residue of this contract, and proceed to finish the same by other parties, with the right to retain the damages thereby occasioned them out of the moneys in their hands to the said M. O'Dwyer belonging, and to sue for any loss which they may not be able to recover."

Thereupon the plaintiff's connection with the work ceased, and defendant finished the same at his own expense. Plaintiff's version is somewhat different. He says he put on extra men at the request of defendant, with the understanding that defendant would advance more money weekly than the $150 called for by the contract, as defendant was very anxious to complete the work within the time agreed upon between defendant and the owners of the premises; that the said check of $178 was insufficient to pay the men in full; and that when the men struck the defendant demanded that plaintiff pay the men or

cancel the contract; that plaintiff replied that he had not enough money to pay the men, whereupon defendant sent plaintiff a letter canceling the contract, because plaintiff had, as alleged by defendant, "fraudulently retained $78 sent for the payment of wages." The plaintiff claims that his contract was wrongfully broken and canceled, and sues the defendant to recover the actual value of the services, waiving the contract. It is the contention of plaintiff that the cancellation of the contract was not justified; that the plaintiff is not limited to an action for the damages sustained by him by reason of the breach of contract, but that he can sue on a quantum meruit for the work, labor, and services; and that it was not error to permit plaintiff to show a subsequent oral agreement, under which plaintiff put on extra men, and defendant agreed to advance sufficient funds to meet the additional expense in excess of the $150, called for by the contract, per week; and, finally, that plaintiff showed the damages to be $422.20. There is evidence, which seems to be undisputed, that defendant did advance weekly payments in excess of the $150, called for by the contract, which tends strongly to corroborate plaintiff's claim of a subsequent oral agreement. There is also sufficient evidence that the $178 were not enough to pay the men in full, as plaintiff applied part of it to the payment of other bills. The strike against plaintiff lasted for one day only. We incline to the opinion that defendant was not justified in canceling the contract, under the proofs presented. As the contract was terminated by the employer, against the will of the contractor, the latter was not confined to the contract price of the work done, but could waive the contract, and bring his action on the common-law count for work, labor, and materials, and recover what they were actually worth. Clark v. Mayor, etc., 4 N. Y. 338, 53 Am. Dec. 379; Wright v. Reusens, 133 N. Y. 298, 305, 31 N. E. 215; Purdy v. Iron Co., 11 Misc. Rep. 406, 32 N. Y. Supp. 157; Simmons v. Ocean Causeway, 21 App. Div. 30, 47 N. Y. Supp. 360. Nor was it necessary for plaintiff to tender to defendant the $996.30, received by him under the contract, before suing on a quantum meruit, as it was only necessary for him to credit defendant with the payments on account, as he has done. Brewster v. Wooster, 131 N. Y. 473, 30 N. E. 489. The provision in the contract that the weekly payments should not exceed $150 was in defendant's favor, and he was at liberty to waive it, in consideration of plaintiff's putting on extra men to hasten the completion of the work. Iron Co. v. Eisner, 39 N. Y. Super. Ct. 200; Thomson v. Poor, 147 N. Y. 402, 42 N. E. 13. The evidence of plaintiff, which was credited by the justice, shows that the value of the work, labor, and services was at least equal to the amount of the judgment. He shows the value to be $1,478, or, after deducting the $996.30 paid, a trifle more than the $500, for which he sues. The justice, however, deducted $78, claimed by defendant to have been appropriated to other purposes than that for which defendant sent it to plaintiff, viz., payment of wages, and gave judgment for $442 damages, together with $25.47 costs. Upon the whole case, we think the judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.