# Richmond

## HOPKINS, RECEIVER OF THE ILLINOIS SUPPLY COMPANY V. COMMONWEALTH, AT RELATION OF JOSEPH BUTTON, COMMISSONER OF INSURANCE, AND ELLINGTON & GUY, INC.

### January 20, 1921.

1. SURETYSHIP.—*Foreign Surety Company—Bond Given to United States for Erection of Post Office in North Carolina—Right of Virginia Materialman Under Acts 1906, p. 132—Case at Bar.*— A construction company entered into a contract with the United States to construct a post office building at Greenville, N. C., and executed in Washington a bond for the faithful performance of the contract with an Illinois Surety Company licensed to do business in Virginia as surety. The construction company was adjudicated a bankrupt and one of its creditors was a Virginia corporation which had furnished material for the post office. Suit was brought in the United States District Court for the district in which Greenville is located, for the use and benefit of all laborers and materialmen, and a judgment was rendered in this suit in favor of the United States for the benefit of various claimants, including the assignee of the claim of the Virginia corporation which had furnished materials.

   *Held:* That the claim of the assignee of the Virginia corporation for the materials furnished by it for the post office was not within the contemplation and protection of the Virginia act (Acts 1906, p. 132, *et seq.*), providing the terms on which surety and guaranty companies are admitted to do business in Virginia; and that such claim had no lien upon the securities deposited by the Illinois Surety Company with the treasurer of the Commonwealth in compliance with that act.

2. SURETY COMPANIES.—*Bond Given to United States—Right of Action of Materialman.*—Under the act of Congress (33 Stat. at L. 811, ch. 778, U. S. Comp. Stat. Supp. 1911, p. 1071), giving a right of action upon the bond of a government contractor to persons supplying him with labor and materials, the

18

cause of action is created by the statute and does not arise out of the contract between the contractor and materialman.

3. SURETYSHIP.—*Foreign Surety Companies—Acts 1906, p. 170.*— Under Acts 1906, p. 170, section 21, relating to surety companies, a Virginia materialman who has furnished a United States contractor with materials for a post office In North Carolina has no right of action in Virginia against the surety on the contractor's bond executed in Washington.

4. SURETYSHIP.—*Foreign Surety Companies—Acts 1906, p. 170.*—Section 21 of Acts 1906, p. 170, relating to surety companies, clearly contemplates judgments recovered against the surety company upon suits instituted and prosecuted within Virginia, and did not intend to provide authority for suits against surety companies in any State in the Union where the principal obligor for whom the company had become surety might be sued.

5. SURETYSHIP.—*Foreign Surety Companies—Acts 1906, p. 167.*—In section 5 of the act relating to the admission of a foreign company to do business in this State (Acts 1906, p. 167), the words "judgment, order, or decree of a court of competent jurisdiction" mean judgment, order, or decree of a court of competent jurisdiction of this State.

6. SURETYSHIP.—*Foreign Surety Companies—Acts 1906, p. 132.*—Section 4, Acts 1906, p. 132, providing that no foreign guaranty, or security company should make contracts before obtaining a license, contemplates contracts within the State.

7. SURETYSHIP.—*Foreign Surety Companies—Acts 1906, p. 133.*— Section 9 of the act relating to foreign surety companies (Acts 1906, p. 133), providing for service of process against such companies, relates to business transacted in this State, and the general provision as to service of process cannot be construed to apply to proceedings in another State.

8. WORDS AND PHRASES.—*"Such"—Acts 1906, p. 167.*—The word "such," in the phrase "any such undertakings or obligations of such company," found in section 7 of the act relating to foreign surety companies (Acts 1906, p. 167), and in its general use, is not a word of amplification, but of identification. It serves to connect the words "undertakings or obligations" with their use or appearance in an antecedent portion of the statute, namely, in section 2, p. 166, Acts 1906.

9. FOREIGN CORPORATIONS.—*Act Governing Foreign Surety Companies—Liberal Construction.*—Acts 1906, p. 122, relating to foreign, surety and other companies, should be given a broad interpretation, to the end that any company undertaking to do business in this State shall not escape liability for its under-

takings or obligations in consequence of a failure on its part to comply with all the requirements of the statute. The statute contemplates that this should be done, and the courts should make effectual its expectations in this respect. But the statute should not be strained beyond its general intendment, fairly and reasonably construed, according to accepted principles of construction, to meet the supposed hardships of a Virginia litigant.

Appeal from a decree of the Circuit Court of the city of Richmond. Decree for petitioner. Defendant appeals.

*Reversed.*

The opinion states the case.

*Jo Lane Stern* and *A. J. Hopkins,* for the plaintiff in error.

*A. B. Dickinson,* for the defendant in error.

SAUNDERS, J., delivered the opinion of the court.

In 1913, the W. J. Brent Construction Company, of Norfolk, Virginia, entered into a contract with the United States Government to construct a post office building at Greenville, N. C. Pursuant to the requirements of the government, the construction company executed a bond to the United States for the faithful discharge of its undertaking. This bond was executed in Washington, at the office of F. B. Rhodes, with the Illinois Surety Company as surety. In October of the same year, the construction company entered into a contract in the city of Richmond, Virginia, with the Ford-Whitehurst Manufacturing Company, a Virginia corporation, with its chief office in said city, to supply certain materials for the building in Greenville, N. C. These materials were to be delivered f. o. b. at Richmond,

and the payment for the same was to be made in said city. The bond of the contracting company, among other things, provided for the payment of all persons supplying labor, or materials, used in the building, *supra.* This provision was in conformity with the requirements of the Federal statute.

The construction company completed the post office building in due course, and the same was accepted by the government, but it did not pay all of the laborers engaged upon said building, or for all of the materials that went into the same. Shortly after the building was completed and accepted, the construction company was adjudicated a bankrupt. One of the creditors of the bankrupt concern was the Ford-Whitehurst Manufacturing Company. This company assigned its claim to Ellington & Guy, a Virginia corporation, and the latter concern thereupon brought suit upon this claim in the Circuit Court of the city of Richmond against the Brent Construction Company, and recovered against this company a judgment for something over $1,300.00, the same being for materials furnished for and used in the construction of the said post office building. About this time a suit was brought in the United States District Court for the district in which Greenville is located, for the use and benefit of all laborers and material men who had supplied labor and materials for the post office building, and whose claims had not been discharged by the construction company.

In June, 1917, a judgment was rendered in this suit in favor of the United States for the benefit of various claimants. The recovery for Ellington & Guy, assignees of the claim of the Ford-Whitehurst Manufacturing Company, was in the sum of $1,310.68.

In June, 1916, Joseph Button, Commissioner of Insurance of the State of Virginia, filed a petition in the Circuit

Court of the city of Richmond, representing that the Illinois Surety Company, which had theretofore been licensed to do business in the State of Virginia, was insolvent, and unable to pay its creditors in this State. In consideration of this fact, petitioner asked that the surety company be made a party to the petition, and that petitioner should be directed to take possession of the property of said company in this Commonwealth, and distribute the same among those proven to be entitled thereto, and that all proper orders should be entered in said suit and all proper accounts taken.

The property referred to consisted of bonds of the city of Norfolk to the extent of $13,000, these bonds having been deposited with the Treasurer of the State of Virginia by said surety company, in compliance with the requirements of the Virginia statute, and as a prerequisite to doing business in this State.    As a part of his petition, Commissioner Button filed certain exhibits showing that Jas. S. Hopkins had been appointed by the Supreme Court of Cook county, Illinois, receiver of the Illinois Surety Company, and of all of its assets of every description, and that he, the said commissioner, had been empowered by the State Corporation Commission of Virginia to proceed against the said surety company in the Circuit Court of the city of Richmond in accordance with the provisions of the act (Acts 1912, c. 624) entitled "An act in relation to proceedings against, and the liquidation of, delinquent insurance companies."

The surety company filed an answer to this petition, admitting its general insolvency, and that Jas. S. Hopkins had been appointed a receiver of its property and assets of every nature, but denying that it was not able to pay its creditors in the State of Virginia.    The answer specifically set up that the bonds which the company had deposited with the Treasurer of Virginia were enough to pay all the

creditors of the company in this State, and leave a surplus. Thereupon the circuit court directed Robert E. Peyton, Jr., one of its commissioners, to take an account of all the property of the surety company in the State of Virginia, and of all claims in the State of Virginia outstanding against the said company, together with their dignities and priorities.

The commissioner, under the first head, reported that the only assets of the company in this State consisted of thirteen bonds of the sum of $1,000 each, of the city of Norfolk, Virginia, four per cent. Atlantic ward improvement bonds. Under the second head, the commissioner reported several debts including the judgment of Ellington & Guy, *supra,* for the sum of $1,310.68.

The specific finding of the commissioner with respect to this judgment of Ellington & Guy is as follows: "Your commissioner will, therefore, report that Ellington & Guy, Inc., are entitled to a lien upon the bonds deposited by the Illinois Surety Company with the Treasurer of the State of Virginia to the extent of $1,310.68, with interest, etc., until paid."

The receiver of the surety company excepted to this finding on various grounds, but the circuit court overruled these exceptions and confirmed the report in all respects. This decree of the circuit court is now under review.

[1] It will be noted from what has been stated that the sole question presented for determination is whether such a claim as that of Ellington & Guy was within the contemplation and protection of the statute providing the terms on which surety and guaranty companies would be admitted to do business in this State; that is to say, did the statute intend that a claim of this character should have a lien upon the securities deposited with the Treasurer of the Commonwealth?

The answer to this inquiry must be sought and found in the statute itself.   The judgment obtained by Ellington & Guy was not obtained in this State, or by virtue of any statute of this State.   It was obtained in North Carolina, in a Federal court (D. C.), 238 Fed. 840, and by virtue of a Federal statute.

[2]    The Supreme Court of the United States, in the case of *Texas Cement Co.* v. *McCord,* 233 U. S. 157, 34 Sup. Ct. 550, 58 L. Ed. 893, speaking of the Federal statute of 1905, the one under which suit was brought in North Carolina against the Illinois Surety Company, says: "By this statute a right of action upon the bond is created in favor of certain creditors of the company.   The cause of action did not exist before, and is the creature of the statute. * * * The statute creates a new liability, and gives a special remedy for it."

To the same effect is *Stitzer* v. *United States,* 182 Fed. 516, 105 C. C. A. 54: "The act was not intended to and does not bar any cause of action, but rather creates one.   The lapse of six months was a condition precedent to the plaintiff's right to sue.   In other words a conditional cause of action was conferred.   Such cause of action was created by the statute, and must be instituted pursuant to the terms and conditions of the statute and not otherwise."

The bond of the surety company was primarily for the United States, which was entitled to absorb in damages the entire amount of same, if necessary for its protection.   The other persons protected by the bond, that is, the unpaid material men and unpaid laborers, take only what is left after the payment of the claims of the United States.   Hence, as stated *supra,* the judgment of Ellington & Guy against the surety company rests exclusively upon the statute of a foreign jurisdiction.   The contract between the Brent Construction Company and the Ford-Whitehurst Company (as-

signor of Ellington & Guy) was a contract exclusively between those parties. It gave no right of action against the surety company. The parties very well understood this, for in the suit in the Law and Equity Court of Richmond against the Brent Construction Company no attempt was made to include the surety company as a co-defendant.

[3, 4] In the act relating to surety and other companies (Acts 1906, p. 170, sec. 21), it is provided that "any suit or civil proceeding may be instituted against any such company in the place where it has become surety, qualified as fiduciary, or assumed any duty or obligation as principal, or otherwise, which may be the subject of suit, or other civil proceeding, or such suit or civil proceeding may be instituted in the place in which the principal obligor, for whom it has become surety, can be sued * * *."

Under no provision of this section could Ellington & Guy have sued the surety company. The bond was actually executed in Washington, D. C. Ellington & Guy might have sued the Brent Construction Company in Norfolk, or in Richmond, but in neither the one place nor the other could they have associated the surety company as a co-defendant with the construction company. In other words, they had no right of action at either place against the surety company. This section clearly contemplates judgments recovered against the surety company upon suits instituted and prosecuted within Virginia. Certainly it had in mind Virginia citizens, and did not intend to provide authority for suits against surety companies in any State in the Union where the principal obligor, "for whom the company had become surety," might be sued.

[5] Section 5 of the same act, p. 167, provides that a surety company depositing bonds with the Treasurer of this State shall collect the interest on the same until the company "fails to pay any of its liabilities in this State by rea-

son of its becoming surety as aforesaid, or by reason of its assuming any duty or obligation of like nature as principal or otherwise, or becoming fiduciary, and which failure has been ascertained by agreement of the parties binding on such company, or by judgment, order or decree of a court of competent jurisdiction against such company, not appealed from, superseded, or stayed."

The words, "judgment, order or decree of a court of competent jurisdiction," are very broad, but bearing in mind that this is a statute relating to the admission of foreign companies to do business in this State, these words fairly and reasonably construed, according to the general intendment of the statute, must mean the judgments, orders or decrees of a court of competent jurisdiction within this State.

[6]   Section 4 of the act (p. 132) provides that "no foreign or alien guaranty, or security, or like company, shall make any contracts of indemnity, surety, or other like contracts, or become a trustee or fiduciary within this State, until such company shall have obtained from the State Corporation Commission a license so to do."

This section contemplates contracts within this State. Assuredly a State statute would not undertake to provide that a surety company could not make contracts outside of the State until it had secured a license to do business within the State from the Corporation Commission.

[7]   Section 9 of the same act (p. 133) provides, that before license is granted to a foreign surety or other like company to transact business in this State, it shall consent, in the manner provided by the section, that service of process on the agent of the company or the insurance commissioner, if there be no such agent, shall be valid service on the company.

This section, like the others cited, relates to business transacted in this State, and the general provision as to

service of process could in no sense be construed to apply to proceedings by which judgment would be recovered in North Carolina, or any other State.

Section 12 (p. 133), provides that a surety company that "shall fail to pay its taxes due the State, shall cease to transact business in this State." Suppose that just prior to the execution of the bond to the Federal government, in the case in judgment, the Illinois Surety Company had lost its right to do business in this State by virtue of its failure to pay its taxes, would its loss of right in the respect suggested have in any wise impaired its capacity to execute its bond to the United States, or affected the rights of Ellington & Guy under that bond? Those rights are derived purely under a Federal statute. Ellington & Guy would have had precisely the same rights against any surety company guaranteeing the undertaking of the Brent Company that it had against the Illinois Surety Company. The fact that the latter company, at the time it executed the bond, *supra*, had a license to do business in Virginia is irrelevant and unimportant.

[8, 9] Commissioner Peyton, with some difficulty on his part, reached the conclusion that the words "any such undertakings, or obligations of such company," found in section 7 of the act (p. 167), should be given a liberal construction, and giving the same such a construction, that the statute afforded Ellington & Guy a lien upon the bonds in the hands of the treasurer. The word "such," in the connection cited, and in its general use, is not a word of amplification, but of identification. It serves to connect the words "undertakings, or obligations," with their use or appearance in some antecedent portion of the statute. The section would have been much broader if the word "such" had been omitted, leaving the sentence to read, "Upon the bonds deposited as aforesaid with the treasurer, any citizen

of this State who may be interested in the performance of any undertaking, or obligation, of such company, whether as principal or surety, shall have a lien for the amount due or to become due in consequence of any failure in the performance, and shall be entitled," etc.

Looking to section two (p. 166), we find the words "undertaking, or obligation," which are later identified by the word "such" in section seven. Section two provides, that "although any such company may become surety for the faithful performance of any trust, duty, contract, agreement, or bond, public or private, official or otherwise, or have assumed any duty or obligation of like nature, as principal or otherwise, or qualified as fiduciary, without conforming to the requirements of this act and of the laws relating to the same, the *undertaking* or *obligation* shall be valid, whether said company was incorporated by the laws of this State or not."

Any citizen of the State interested in the faithful performance of these obligations, or undertakings, as contemplated by the statute, is entitled to the benefit of the lien provided. The statute under consideration should be given a broad interpretation to the end that any company undertaking to do business in this State shall not escape liability for its undertakings or obligations in consequence of a failure on its part to comply with all the requirements of the statute. The statute contemplates that this should be done, and the courts should make effectual its expectations in this respect. But the statute should not be strained beyond its general intendment, fairly and reasonably construed, according to accepted principles of construction, to meet the supposed hardships of a Virginia litigant. Our inquiry should be: (1) What is the general policy of the statute, and what are the cases for which it intends to provide? (2) Is the claim under consideration one of those cases?

The contention that this statute should be interpreted broadly was made in *Shepherd* v. *Va. State Ins. Co.*, 120 Va. 383, 91 S. E. 140. The claimant in that case was a domestic insurance company, holding a contract of reinsurance on risks outside of the State with a foreign company doing business in this State. The foreign company having become insolvent, the domestic company maintained that it was entitled to be classed as a policyholder and lienor under the provisions of section 17, (ch. 2) of the act. This court, construing the section cited and other sections *in pari materia*, held, first, that the policyholders contemplated by the act and therein protected were only such as held policies on properties in Virginia; and, second, that the purpose of the section as to fire insurance was to protect only holders of policies on property.

The court, in the case last cited, decided that the legislature "did not contemplate, as a possible result of section 17 of the act (discussed *supra*), that a resident company would be permitted to bring a claim for fire losses and unearned premiums, under a contract reinsuring its own risks in a foreign State, into a ratable distribution of the proceeds of the bonds deposited along with the holders of fire insurance policies protected by the act." Such a construction, the court said, "might often result, as it would do in the case at bar, in nullifying to a very material degree the ruling purpose in the statute."

We have reached a like conclusion with respect to the effect of giving claims such as that of Ellington & Guy a lien on the securities in the hands of the Treasurer. This was a judgment obtained, as pointed out *supra*, under the Federal statute. The surety company, as a prerequisite to executing the bond, did not require a license or any authority under the Virginia statutes. If judgments of this character, and judgments obtained in other States from

Maine to California, by virtue of the statutes of those States, are entitled to the same benefits as judgments obtained in the courts of this State upon contracts made in this State, with reference to business to be done in this State, then the very natural reflection occurs that the deposit of securities required of the surety companies is inadequate. Such a holding, in the language of the court in *Shepherd's Case,* "might often result in nullifying to a material degree the ruling purpose in the statute."

We do not believe that our statute ever contemplated that a bond furnished under the requirements of this Federal statute, and affording the protection provided by that statute, would give a creditor of a surety company who has obtained a judgment by virtue of such statute, the same rights in relation to and the same lien upon the securities of a surety company as are afforded a creditor of such a company who has obtained a judgment on a bond executed by the company within Virginia pursuant to the Virginia statute, for the faithful discharge of an undertaking within the limits of this State. Having obtained a judgment against the Illinois Surety Company by virtue of the Federal statute, Ellington & Guy, in the absence of any specific fund provided by that statute for the discharge of its judgment, and there is no such fund, must file their claim with the court in Chicago now administering the estate of the Illinois Surety Company, and receive such dividends as that court shall award. The securities of the Illinois Surety Company were placed with the proper official of this State on trust, and must be returned to the receiver of that company after the discharge of the debts of the company in this State.

The conclusions reached in this case are derived from a comprehensive examination of the statute as a whole with a view to ascertaining its apparent general policy. The re-

sults of this examination are supported by the evident meaning of the special provisions cited.

It is evident from what has been stated that the decree of the Circuit Court of the city of Richmond, giving Ellington & Guy a lien upon the securities of the Illinois Surety Company, must be reversed, and that is accordingly done, and this court will enter a decree sustaining the exception of the appellant to the report of Commissioner Peyton, and awarding to the appellant his costs against Ellington & Guy in this court.

*Reversed.*