**UNITED STATES, for Use of SUSI CONTRACTING CO., Inc., et al. v. ZARA CONTRACTING CO., Inc., et al.**

No. 106.

Circuit Court of Appeals, Second Circuit.

Dec. 18, 1944.

George M. Simon, of Albany, N. Y. (McClung, Peters & Simon, of Albany, N. Y., on the brief), for plaintiffs-appellees-appellants.

Benjamin Machinist, of White Plains, N. Y. (Barrett & Machinist and James H. Barrett, all of White Plains, N. Y., on the brief), for defendant-appellant-appellee Zara Contracting Co., Inc.

Joseph F. Murray, of New York City (Murray, Kissam & Hayden, of New York City, on the brief), for defendant-appellant-appellee American Bonding Co. of Baltimore.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Plaintiffs, Susi Contracting Co., Inc., and D'Agostino & Cuccio, Inc., brought this action under the provisions of the Miller Act, 40 U.S.C.A. § 270a et seq., in the name of the United States against Zara Contracting Co., Inc., and American Bonding Company of Baltimore, the surety on its bond, to recover for work performed for and equipment supplied Zara in the performance of its contract with the United States, dated March 4, 1941, for the extension of Tri-Cities Airport, Endicott, New York. On April 2, 1941, Zara entered into a subcontract with plaintiffs, wherein plaintiffs agreed, except for one $100 item, to perform the entire work called for by the main contract with the United States. This work involved the excavation of material and placing, manipulating, rolling, and compacting it as a base and surface course for landing strips or runways. During the course of the excavation plaintiffs encountered unexpected soil conditions, mostly due to the presence of a great deal of clay material, which made progress of their work extremely difficult, caused the breakdown of their tools, and, according to their allegations, generally required the performance of work not called for by the contract. Consequently on several occasions they made demands on Zara for extra money; and eventually the dispute arose which led to mutual claims of breach of contract and, by easy stages, to the opposing claims for monetary solace of this action. At any rate, defendant Zara took over the completion of the contract about July 12, 1941, or two months after plaintiffs had begun work. It also took possession of and for some three months utilized the equipment furnished by plaintiffs at the contract site.

In this action plaintiffs alleged that Zara wrongfully terminated the subcontract, and sought recovery for the reasonable cost and value of the actual work performed, and the fair and reasonable rental value of the equipment for the period of its retention and use. Defendant Zara put in issue the material allegations of the complaint and also filed a counterclaim wherein it alleged that it was compelled to terminate the contract by plaintiffs' refusal to perform it, and demanded damages for its breach against plaintiffs. Defendant American also put in issue the material allegations of the complaint and asserted further that plaintiffs had failed to state a claim against it upon which relief could be granted. The District Court found generally for the plaintiffs, holding that Zara had wrong-

fully terminated the contract and that there was due them $39,107.10 for work done at the contract rate, $18,600 for increased cost of excavation due to the soil conditions encountered, and $5,157.75 as rental allowance for plaintiffs' equipment, less $43,345.20, the amount advanced by Zara during the course of the work, or a net of $19,519.65, together with interest from the date of the filing of the suit. All parties have appealed, plaintiffs because the rental allowance was too small, and both defendants because of the holding that Zara was the one who breached the contract and because of the allowance for increased cost of excavation. In addition, Zara claims damages, while American contends that in no event does the bond which it has given pursuant to the statute cover the rental allowance for equipment.

The first issue to be determined on this appeal is whether the court below correctly held that plaintiffs were prevented from continuing their contract by the action of defendant Zara and had not themselves breached their contract so as to bar them from recovering the fair value of labor performed prior to July 12, 1941, and the rental value of their equipment used by defendant Zara in the performance of the contract after that date. The supposed grounds of Zara's termination of the contract are set out in a letter by Zara to plaintiffs, dated July 11, 1941. Some of these allegations are so obviously without substance that no purpose would be served by discussing them here. It does appear that one steam shovel used by plaintiffs was not in accord with the contract specifications, that plaintiffs failed to keep some of the equipment free from liens, so that Zara had to make advancements when installments became due and seizure imminent, and that plaintiffs were excavating 20,000 cubic yards a week, instead of the average of 27,000 cubic yards required by the contract. These grounds were waived by Zara, however, since no protest was made at the time of the alleged incidents of breach, though Zara was well aware of them, and plaintiffs were permitted to continue with the project. See Clark v. West, 193 N.Y. 349, 360, 86 N.E. 1; Hotchkiss v. City of Binghamton, 211 N.Y. 279, 283, 105 N.E. 410; S. & E. Motor Hire Corporation v. New York Indemnity Co., 255 N.Y. 69, 72, 174 N.E. 65, 81 A.L.R. 1318. It is clear that Zara could not in this way reserve the privilege to terminate the contract at any time. Cf. Herkenham v. Hoenzsch, 211 App.Div. 224, 207 N.Y.S. 589; Bell v. Fox, 138 App.Div. 569, 123 N.Y.S. 310.

There is another reason which supports the court's decision that Zara could not base its termination of the contract on plaintiffs' failure to maintain the excavation schedule. Under the terms of the subcontract Zara could not terminate it because of delays "due to unforeseeable causes beyond the control and without the fault or negligence of the Sub-Contractor," provided plaintiffs gave certain notices to the Government and certain steps were taken by the latter to fix the facts and extent of the delay. There were, however, unforeseen consequences in the nature of the soil encountered, about which fact revolve (as we shall see) the most controverted issues of the case. Sheet 1 of the plans forming part of the main contract set forth test borings showing that the subsoil surface over a considerable portion of the excavation area was of gravel, sand, and silt nature. Actual excavation disclosed, however, that the subsoil area was of a clay material, much more difficult and expensive to remove; and it was in consequence of this unforeseen condition that work was slowed down. Both Zara and the Government officials were thoroughly apprised of the situation; in fact Zara made it the grounds of a claim to the United States for additional compensation and received a substantial additional allowance. Even without this contract provision no termination would have been justified under the circumstances, cf. Lossing v. Cushman, 123 App.Div. 693, 108 N.Y.S. 368, reversed on other grounds 195 N.Y. 386, 88 N.E. 649; Gutman v. Crouch, 57 Hun 586, 10 N.Y.S. 275; with the provision it would have been clearly inequitable so to hold.[1]

But Zara makes the further contention that the subcontract was terminated because of plaintiffs' refusal to remove the clay material. The evidence shows that on July 8 and 9, plaintiffs interrupted their work and that on the latter day Joseph Susi, president of the Susi Company, said

---

[1] There is no reason to limit the natural meaning of "unforeseeable causes" because of another provision of the contract in a different article prohibiting claims by the subcontractor for unknown latent or subsurface conditions (note 2, infra). See discussion of this provision below.

in some heat that he would not dig any more of that "lousy" material. But the evidence also indicates that work was resumed on July 10 and 11; and in view of the overwhelming testimony to the contrary, we cannot accept Zara's rather far-fetched and hypothetical proposition, based on mathematical formulae, that, since the amount of excavation on these days exceeded the daily average, plaintiffs must have failed to excavate the more difficult clay material. The testimony does indicate that on the days in question at least some of the excavation was in the clay area. It also appears that it had rained about the time of the interruption of work. Rain, moreover, in the past had frequently forced the contractors to cease their labors, since clay, once wet, could not be hurled to the surface. Weather conditions thus seem a reasonable explanation of the work stoppage on July 8 and 9. Susi's statement can be easily dismissed as made inadvertently and in anger, or in the alternative, as plaintiffs reasonably contend, can be construed as a declaration that no further digging of clay would be done unless some arrangement were made for additional compensation. Moreover, these issues were primarily of fact and have been settled by the District Court's explicit findings of fact. We find no error, therefore, in the decision that Zara wrongfully prevented plaintiffs from completing the project.

■ This, of course, disposes of Zara's claim for damages and leaves for consideration the amount of recovery due the plaintiffs. In their complaint originally plaintiffs had a second count claiming an accounting of profits; but this they abandoned, and they have made no claim for damages for breach of contract. Their only claim, therefore, is for the value of the work performed and of the rental of equipment retained by Zara on the job. Taking up, first, the value of the work performed, three theories are suggested to justify the additional award made below—

in addition to that made at the regular contract rate—of $18,600 for the increased cost of excavating the clay material. The first, apparently most favored by the plaintiffs, is that this excavating (as well as the separate mixing of materials to form the airport runways made necessary by the soil condition) was extra work, not covered by the contract figures, and hence was separately compensable. Apparently their complaint was drawn on this theory; but the allegations are of a general nature, and, of course, after trial the judgment must grant the relief to which plaintiffs' case as presented entitle them. Federal Rules of Civil Procedure, rule 54(c), 28 U.S.C.A. following section 723c; Cohen v. Randall, 2 Cir., 137 F.2d 441, 443, certiorari denied 320 U.S. 796, 64 S.Ct. 263; cf. United States v. Pape, 2 Cir., 144 F.2d 778, 791, certiorari denied Pape v. United States, 65 S.Ct. 86. The second, relied on by the trial court, is that, since the subcontract made the provisions of the main contract determinative and applicable to the subparties, except where otherwise provided, the plaintiffs should have the advantage of the provisions of the main contract under which Zara successfully sought additional compensation against the United States. And the third is that, in view of Zara's default, they may waive the contract entirely and sue in quantum meruit for the reasonable value of the work performed.

Defendants contend, however, that under the terms of the subcontract plaintiffs were not entitled to any allowance for extra costs over and above the contract price, even though entailed in consequence of the misrepresentations as to the subsoil conditions. They rely principally on Article 5 of the subcontract, reprinted in the margin,[2] wherein plaintiffs agreed that no representations as to subsurface conditions have been made, nor have they been induced to enter into the contract in reliance upon the drawings or plans, and they promised to make no claim for damages for unknown conditions. In support of their con-

[2] "No representations have been made to the Sub-Contractor as to any sub-surface or latent conditions at the site; nor has the Sub-Contractor been induced to enter into this sub-contract in reliance upon any representations shown on the drawings or indicated in the specifications as to any sub-surface or latent conditions at the site. The Sub-Contractor agrees that it will make no claim against the Contractor for damages in the event that, during the progress of the work, the Sub-Contractor encounters sub-surface and/or latent conditions at the site materially differing from those shown on the drawings or indicated in the specifications, or unknown conditions of an unusual nature differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the plans and specifications."

tention they cite such cases as T. J. W. Corporation v. Board of Higher Education of City of New York, 251 App.Div. 405, 296 N.Y.S. 693, affirmed 276 N.Y. 644, 12 N.E.2d 800. and Niewenhous Co. v. State, 248 App.Div. 658, 288 N.Y.S. 22, affirmed 272 N.Y. 484, 3 N.E.2d 880. But these cases are limited to claims for extra work, where the contract has not been wrongfully terminated by the employer. The situation is quite otherwise where, as here, defendants have breached the agreement. We agree that the definite commitment which the plaintiffs have made in Article 5 is one they must stand by so long as they must rely upon their contract; and hence we find it difficult to see why the first two theories presented above, that particularly pressed by the plaintiffs and that relied on by the trial court, do not conflict directly with this agreement, which seems to contemplate the very situation to which it would then be held inapplicable. No such infirmity attaches to the third theory, however.

For it is an accepted principle of contract law, often applied in the case of construction contracts, that the promisee upon breach has the option to forego any suit on the contract and claim only the reasonable value of his performance. This is well settled in the New York cases. Clark v. New York, 4 N.Y. 338, 53 Am. Dec. 379; Wright v. Reusens, 133 N.Y. 298, 305, 31 N.E. 215; Purdy v. Nova Scotia Midland Ry. & I. Co., 11 Misc. 406, 32 N.Y.S. 157; Simmons v. Ocean Causeway of Lawrence, Long Island, 21 App. Div. 30, 47 N.Y.S. 360; O'Dwyer v. Smith, 38 Misc. 136, 77 N.Y.S. 88; Silleck v. Robinson, 60 Misc. 481, 113 N.Y.S. 832; cf. also Majestic Tile Co. v. Nicholls, 161 Misc. 231, 291 N.Y.S. 551, 557.

It also appears to be the general view, save for an occasional case viewed as illogical by the text writers, who are solidly in support of the doctrine. See, for example, Rodemer v. Gonder, 9 Gill, Md., 288; Connolly v. Sullivan, 173 Mass. 1, 53 N.E. 143; City of Philadelphia v. Tripple, 230 Pa. 480, 79 A. 703; Valente v. Weinberg, 80 Conn. 134, 67 A. 369, 13 L.R.A.,N. S., 448; Boomer v. Muir, Cal.App., 24 P.

2d 570; Patterson, Builder's Measure of Recovery for Breach of Contract, 31 Col. L.Rev. 1286, 1300-1303; 5 Williston on Contracts, Rev.Ed., § 1485; McCormick on Damages, § 166; Woodward on Quasi-Contracts, §§ 268, 269; Restatement, Contracts, § 347; 34 Col.L.Rev. 365; 7 So. Calif.L.Rev. 338. The rule has been applied by this court. Schwasnick v. Blandin, 2 Cir., 65 F.2d 354; and cf. Knotts v. Clark Const. Co., 7 Cir., 249 F. 181, certiorari denied 246 U.S. 666, 38 S.Ct. 335, 62 L.Ed. 929.

These authorities make it quite clear that under the better rule the contract price or the unit price per cubic yard of a construction or excavation contract does not limit recovery. This, too, is the rule in New York. Clark v. New York, supra; O'Dwyer v. Smith, supra. This doctrine is particularly applicable to unit prices in construction contracts; as Professor Patterson points out, 31 Col.L.Rev. at page 1303, a plaintiff may well have completed the hardest part of a job for which an average cost had been set. But it seems settled now in New York that with the breach fall all the other parts of the contract. Matter of Montgomery's Estate, 246 App.Div. 495, 284 N.Y.S. 5; Id., 272 N.Y. 323, 6 N.E.2d 40, 109 A.L.R. 669, affirming 248 App.Div. 809, 290 N.Y.S. 556, affirming 158 Misc. 412, 287 N.Y.S. 136; Sterling Motor Truck Co. of New York v. Schuchman, 260 N.Y. 358, 183 N.E. 524.[3] Hence it is clear that plaintiffs are not limited to the contract prices in the situation disclosed here.

As we have noted, the trial court granted recovery for $39,107.10 for the work done at the contract price, together with an additional sum of $18,600 for the extra cost of excavation of the clay, computed as 62,000 cubic yards at the additional expense of 30 cents per cubic yard. The amount of the clay excavation was vigorously disputed by Zara, who offered three mathematical computations each indicating a different amount. But the facts were complicated, and the District Court, having before it not only the estimates of the various witnesses, including engineers

---

[3] There is a statement, not overclear, in Simmons v. Ocean Causeway of Lawrence, Long Island, supra, 47 N.Y.S. at page 363, that the amount chargeable "could not exceed the compensatory sums" provided for by the contract. No precedents were cited. The court may have had in mind one form of the minority view that in any event the total contract price sets an upper maximum, cf. Lehman, J., dissenting in Re Montgomery's Est., supra; but it seems opposed to the late New York cases. Ibid.

on the job, but the claims of Zara made in ed States, reached a reasonable figure, subseeking the extra allowance from the Unitstantially below the plaintiffs' claims, which we are not disposed to disturb. As to the monetary amounts, these are based on the cost of the work to Zara, as well as expert testimony for plaintiffs, and are not seriously disputed. Indeed, in fixing the additional allowance at 30 cents per cubic yard, the judge relied particularly on Zara's claim to the United States wherein it stated that its records showed an actual cost to it of the extra work, amounting to 28.7 cents per cubic yard for the excavating, and 2½ cents per cubic yard for placing the excavated material in the runways. Professor Williston points out that the measure of recovery by way of restitution, though often confused with recovery on the contract, should not be measured or limited thereby; but he does point out that the contract may be important evidence of the value of the performance to the defendant, as may also the cost of the labor and materials. 5 Williston on Contracts, Rev. Ed., §§ 1482, 1483, 1485. It is therefore appropriate here, particularly in default of any challenging evidence, to base recovery on proper expenditures in performance, United States v. Behan, 110 U.S. 338, 4 S. Ct. 81, 28 L.Ed. 168; Watts v. Board of Education, 9 App.Div. 143, 41 N.Y.S. 141, or for extra work, Simmons v. Ocean Causeway of Lawrence, Long Island, supra, and to make use of the contract as fixing the basic price. Ludlow v. Dole, 62 N.Y. 617; Cunningham v. Doyle, 5 Misc. 219, 25 N.Y.S. 476; Purdy v. Nova Scotia Midland Ry. & I. Co., supra.

It is to be noted that, since it is the defendant who is in default, and plaintiffs' performance here is "part of the very performance" for which the defendant had bargained, "it is to be valued, not by the extent to which the defendant's total wealth has been increased thereby, but by the amount for which such services and materials as constituted the part performance could have been purchased from one in the plaintiff's position at the time they were rendered." Restatement, Contracts, § 347, comment c. See also City of Philadelphia v. Tripple, supra, 230 Pa. at page 487, 79 A. 703; Simmons v. Ocean Causeway of Lawrence, Long Island, supra; United States v. Behan, supra, 110 U.S. at pages 344, 345, 4 S.Ct. 81, 28 L.Ed. 168; Patterson, supra, 31 Col.L.Rev. at

page 1299. It is to be noted that in fact defendant Zara did receive benefits most substantial from plaintiffs' performance. Plaintiffs had actually excavated 211,390 cubic yards, for which Zara's profit, as determined by the spread between the main and the subcontract of 5½ cents per cubic yard as a minimum, with higher amounts for a part, would be around $12,000; it had already collected $17,115.79 from the United States for the additional cost of removing the "cohesive silt," of which most was done by plaintiffs, and it had pending a claim against the United States for $18,-840.10 more; and what is perhaps most important, it had received a performance which it needed to make to ensure recovery of these profits and sums from the United States and avoid the danger of being in default, and which it would have had to do itself or purchase in the market. Hence the allowance made by the District Court is justified on the evidence and the law, and we find no error, therefore, in this item of recovery.

As to the rental value for equipment retained by Zara, the dispute arises upon the issue whether Zara shall be charged for the time retained or only for the hours of use. The respective periods are not in dispute, being agreed to by the parties. The only testimony of rental value came from plaintiffs' expert, Mulvaney, a contractor of many years' experience, who gave only rates for retention on a monthly basis, saying that weekly, daily, or hourly rates would each be proportionately higher, and, in response to a direct question of the court, that it would have been virtually impossible at the time and place to have rented equipment on the basis of hours of actual use. His rentals were based upon the officially established rates of the War Production Board in 1942, which were slightly lower than the 1941 rates. He first gave a monthly rate for the first shift of eight hours and then a monthly rate for a second shift of eight hours at half the first rate. Then he added the two together; and since various items were retained for only two weeks, from July 14th to 28th, he divided this total rate by two for those items to get the over-all rate which he considered reasonable. He explained further that the question whether particular equipment was considered at the one- or two-shift rates depended simply on the hours of use, taking 240 hours as a normal month's use on a single shift. Hence

if an item retained for a month was used 240 hours or more, it was entered at the double shift rate; if used for any lesser period, it was entered at the single shift rate, whether or not it may have been used actually 16 hours in a single day or may have been used only for a very limited time or not at all. He did not in terms say that these rates should be divided for shorter periods of *retention,* as distinguished from *use,* where they occurred; but, since he did in fact make such division to cover the period from July 14th to 28th, that seems clearly his intent and plaintiffs have accepted it in their computations.

The trial court in its computation accepted the rates which Mulvaney gave as reasonable, but then used them as a basis for computing hourly rates (by dividing them by 240, as the results show) and allowed only for the hours of actual use in the total sum of $5,157.75. But this clearly was not justified on the testimony; there was no evidence of the hourly rate except that it was much higher, and the "virtual" impossibility of securing equipment on that basis ruled it out anyhow. On the other hand, plaintiffs' computation of $10,391.25 is based on the two-shift rate of retention, whereas the number of hours of user shows, in the light of Mulvaney's formula, that this rate can apply only to a single item. Mulvaney's own testimony was based on hypothetical questions, and cannot be used to vary his own formula. We have recomputed these items on this basis, resulting in an increase of this item from $5,157.75 to $7,227.50, as shown in the margin.[4]

The final contention is that of the surety, American, that the bond does not cover breaches of contract, accountings, or torts, and that it is not liable for the rentals, which it contends are really damages for wrongful taking and retention of equipment. It is sufficient to point out, however, that the present action is one in quantum meruit for the fair value of labor and equipment supplied, that the surety by the bond guaranteed that Zara would make prompt payment "to all persons supplying labor and material in the prosecution of the work provided for in said [the main] contract," and that plaintiffs' supply of labor and material was that generally called for by the main contract. The surety, under the terms of the bond, is thus clearly liable. Cf. United States, for Use and Benefit of Farwell, Ozmun, Kirk & Co. v. Shea-Adamson Co., D.C.Minn., 21 F. Supp. 831, 836, 837; Massachusetts Bonding & Insurance Co. v. United States, for Use of Clarksdale Machinery Co., 5 Cir., 88 F.2d 388; United States, to Use of Anniston Pipe & Foundry Co. v. National Surety Co., 8 Cir., 92 F. 549; Hopkins v. Commonwealth, 129 Va. 137, 105 S.E. 673.

The judgment is modified by increasing the allowance for the fair rental value of equipment furnished from $5,157.75 to $7,227.50, and as so modified is affirmed.

4 Computation of rental value of equipment retained.

| Equipment | Period of Use (hours) | Period of Retention (months) | Rental Rate 1st shift | 2d shift | Total |
|---|---|---|---|---|---|
| Lima Shovel | 11 1/2 | 1/2 | $\frac{1250}{2}$ | | $ 625. |
| Lorain Shovel | 134 | 1/2 | $\frac{1100 + 550}{2}$ | | 825. |
| Cletrac Bulldozer | 701 | 3 | 920 x 3 | | 2,760. |
| International Bulldozer | 250 | 3 | 585 x 3 | | 1,755. |
| International Tractor | 79 | 1/2 | $\frac{325}{2}$ | | 162.50 |
| Ford Truck | 80 | 1/2 | $\frac{50}{2}$ | | 25. |
| Generator | none proved | 3 | 25 x 3 | | 75. |
| Sterling Truck (16 cu. yds.) | none proved | 1/2 | $\frac{800}{2}$ | | 400. |
| 3 Sterling Trucks (8 cu. yds.) | none proved | 1/2 | $(\frac{400}{2})$ each x 3 | | 600. |
| | | | Total Rental | | $7,227.50 |